EDDIE C. HAYES, RESPONDENT, v. THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, A CORPORATION, APPELLANT.— 150 S. W. (2d) 1113.

Kansas City Court of Appeals. April 7, 1941.

1262

*William C. Michaels, Henry I. Eager* and *Robert E. Coleberd* for appellant.

*Alexander & Green* and *Michaels, Blackmar, Newkirk, Eager & Swanson* of Counsel.

1264

*Ike Skelton, Roach & Brenner* and *Walter A. Raymond* for respondent.

BLAND, J.—This is a suit upon a total and permanent disability provision of a group policy of life insurance, with an individual certificate issued thereunder to plaintiff. The policy and certificate contain the same total and permanent disability provisions. The group policy was issued by the defendant to the Loose-Wiles Biscuit Company, insuring the lives of the latter's eligible employees, among whom was the plaintiff who applied for coverage. There was a verdict and judgment in favor of plaintiff in the sub of $1374.48, together with $500 attorneys fees and $129.35 for vexatious refusal to pay the loss. Defendant has appealed.

The facts show that, on July 1, 1926, defendant issued the group policy in question. It is unnecessary for us to set out its provisions,

as the same will be found in the opinion of this court in Butler v. Equitable Life Assurance Society of U. S., 93 S. W. (2d) 1019.

However, in addition to the description of the group policy contained in the opinion in that case, we might say that the policy in question provided that the insurance therein provided for should be in force for one year; that the premium should be paid on the first day of each month in advance by the employer. "It is understood, however, that contributions toward the premiums are to be made jointly by the employer and the employees;" that a grace of thirty-one days was given for the payment of all premiums but the first; that defendant would automatically renew the policy annually on payment, in advance, of the monthly premium and compliance, by the employer, with the terms of the policy as to eligibility of employees, percentage of employees insured and division of premium contributions between the employer and employees; that the insurance on any employee should cease upon his filing a written discontinuance with the defendant, or upon the termination of his employment with the employer; that defendant would not exercise the option to adjust the scale of premium rates before the expiration of five years. The policy also provided under the heading "Annual Dividends" that the policy should participate annually in the distribution of the surplus of the defendant as ascertained and appointed by it, and that the policy was issued on the basis of the American Experience Table of Mortality with three per cent interest "and a reserve is held on that basis for the unexpired term."

The policy was renewed annually as of July 1, 1927, 1928, 1929, 1930, 1931 and 1932, as disclosed in the Butler case. It was cancelled as of August 1, 1932, by an agreement between defendant and the Biscuit Company, and a new group policy, similar to the one cancelled, was issued, with the exception that the total and permanent disability clause was omitted and in its stead a new one appended, providing for weekly accident and health benefits. The Biscuit Company paid all of the premiums falling due on the new policy after August 1, 1932.

Defendant, on July 1, 1926, issued to plaintiff, a certificate in the sum of $1000 under the group policy. His insurance was increased by $250 on August 1, 1926, and by an additional $250 on July 1, 1929. The Biscuit Company, his employer, made a reduction from his wages covering his part of the premiums to be paid on the group policy as follows: From July 1, 1926, to August 1, 1929, 75 cents per month; from August 1, 1929, to Aug. 1, 1932, 90 cents per month; from August 1, 1932, to September 1, 1935, $1.85 per month; from September 1, 1935, to July 1, 1937, $2 per month. From July, 1937, until his insurance was cancelled in 1939 he paid to his employer $1.50 per month.

On February 10, 1937, while in the employ of the Biscuit Com-

pany, plaintiff fell and struck his back and head on a marble slab, which resulted in his total and permanent disablement from that date.

Defendant introduced evidence of letters sent out, booklets passed out, and notices posted on the bulletin boards in the Biscuit Company plant, notifying employees of the change in the insurance. Plaintiff denied any knowledge of notice of such things and denied a purported application for a certificate under the new plan with his name signed to it. No effort was made to take up the old certificate, which remained in his possession at the time of the trial. Plaintiff, at the trial, and now, contends that, in view of the fact that no notice was given to him of the cancellation of the original group policy, and that he continued to pay his premiums in ignorance of the fact that defendant and the Biscuit Company had cancelled it, the same remains in force as to him.

Defendant insists that its instruction in the nature of a demurrer to the evidence, offered at the close of all of the testimony, should have been given for the reason that the contracting parties to the insurance were it and the Biscuit Company, and that those parties, having cancelled the original group policy by mutual consent, no notice to plaintiff was required.

This case cannot be distinguished, although defendant attempts to do so, from that of Butler v. Equitable Life Assurance Society, *supra*. Under the authority of that case defendant's contention must be disallowed. Defendant urges that the reasoning upon which the decision in that case was based is fallacious and that the decision should be overruled; but after a careful examination of the authorities cited by both parties hereto we have decided to adhere to the conclusion we reached therein. In addition to what we said in the Butler case as to the valuable rights that plaintiff had in the original policy, we might add that it provided for total and permanent disability, which provision was omitted in the new policy. That this provision in the old policy was a valuable one to plaintiff is shown conclusively by his subsequent suffering of such a disability. Had he been notified of the termination of the old policy, with its disability provision, he could have taken out a policy of total and permanent disability insurance elsewhere, if not in the defendant company.

However, it is insisted that the demurrer to the evidence should have been sustained because plaintiff failed to furnish defendant proof of his alleged disability before the expiration of one year from the date of its commencement.

The total and permanent disability provision reads as follows: "In the event that any employee while insured under the aforesaid policy and before attaining the age 60 becomes totally and permanently disabled by bodily injury or disease and will thereby presumably be

continuously prevented for life from engaging in any occupation or performing any work for compensation of financial value, upon receipt of due proof of such disability before the expiration of one year from the date of its commencement, the Society will, in termination of all insurance of such employee under this policy, pay equal monthly Disability-instalments. . . . The first payment shall be due upon receipt of said proofs and shall be for the amount of monthly Disability-instalments accrued from the commencement of said Total and Permanent disability, and subsequent instalments shall be paid monthly during the continuance of such disability until the completion of said instalments.''

The record shows that no proof of plaintiff's disability was ever furnished the defendant. However, plaintiff's attorney, on March 14, 1939, wrote defendant: ''Sometime ago Mr. Hayes (plaintiff) became injured and has become permanently and totally disabled. . . . If you desire any further information or a medical examination we will be glad to furnish whatever is necessary,'' and asking that disability payments be made. On March 31, 1939, defendant denied liability on the ground that the original group policy, containing the total and permanent disability provision, had been cancelled, and that it was no longer in force.

Plaintiff admits that no proof of disability was furnished but insists that the testimony shows that the fact that plaintiff was totally and permanently disabled was not discovered by his physician until about the time the letter was written by his attorney to the defendant or, at the latest, three or four months prior to that time, and that as notice of proof of his total and permanent disability could not have been given until it was ascertained that he was so disabled ''notice within the prescribed time after it was determined plaintiff was permanently disabled was a proper compliance with the terms of the policy with respect to notice and proof of loss'' and that defendant, having denied liability within the time plaintiff had to furnish it, under his theory, proof was waved.

Plantiff admits that the furnishing of proof, within the time provided in the policy (as interpreted by him), was a condition precedent and, unless waived, he is not entitled to recover.

The petition alleges that plaintiff was totally and permanently disabled on or about the 10th day of February, 1937. The full recovery of installment payments accruing from that date was prayed for. Plaintiff's instructions also permitted recovery for disability from that date. The verdict is based upon these instructions.

Several doctors treated plaintiff but only one of them, Dr. Irwig, was called as a witness by him. The physician testified that he first saw plaintiff on March 15, 1938; that he treated plaintiff for about nine months or a year, and found no evidence of any organic lesions or physical injury; that plaintiff is suffering from traumatic

neurosis; that neurosis is a nervous disorder; that the word ";traumatic" means that the nervous disorder was brought on by a trauma or an accident; that the traumatic neurosis from which plaintiff was suffering was the malingery type, which means the patient either "wants to be sick or he can't help being sick;" that, in the doctor's opinion, plaintiff wanted to get well but could not. "It is a nervous disease;" that he did not immediately come to the conclusion that plaintiff was suffering from traumatic neurosis; that such a diagnosis is difficult to make; that he came to this conclusion sometime during the time that he treated plaintiff, the exact time not being stated by him.

Plaintiff testified that a few days after the accident he was sent to St. Luke's Hospital in Kansas City, where he was confined for nearly a year; that he has been confined almost continuously in hospitals in Kansas City; that he had a terrible pain in his head which has been continuous since his fall; that he has been unable to sleep at night; that he has lost weight and is very nervous; that he has been unable to do any work since the date of his accident, February 10, 1937; that he has been treated by many members of the medical profession in Kansas City.

The testimony of Dr. Irwig, as to what date he arrived at the conclusion that plaintiff had suffered permanent disability, is indefinite, as already indicated, but it was apparently during the time that he was treating plaintiff and the only testimony on that subject was that the treatments began on October 15, 1938, and continued "for about nine months or a year." However, he did not see plaintiff until after the expiration of many months after the accident and long after he had been treated by other doctors. None of these doctors was called as a witness. Dr. Irwig stated that he had consulted the records of St. Luke's hospital and found that plaintiff was injured on February 10, 1937. He expressed the opinion that plaintiff was in a worse condition "right after the accident because we accomplished some improvement afterwards." He stated that *from the records that he had examined* he was of the opinion that plaintiff was suffering from traumatic neurosis as far back as February 10, 1937, the date of the accident. Asked, in his opinion, whether plaintiff's condition was permanent, he answered: "I believe so. Q. And your opinion, as just given (that plaintiff's condition was permanent) is based upon your examination of Mr. Hayes? A. My examination, observation, and consultation with the above named doctors, previously named doctors."

It is quite apparent from the doctor's testimony that it is difficult to diagnose a case of this kind and that it requires considerable time to arrive at a conclusion. However, it will be remembered that he did not begin to treat plaintiff for more than a year after the accident and he expressed the opinion that probably plaintiff was in a

worse condition immediately after the accident than later. Dr. Irwig's testimony does not disclose as to when he arrived at the conclusion that plaintiff was suffering from traumatic neurosis and, in addition to this, in the absence of the testimony of the other physicians, who treated plaintiff immediately following the accident, the question is left entirely to speculation and surmise as to when his ailment and the permanency thereof was discovered. It may well have been discovered by other physicians sooner than it was by Dr. Irwig.

There is ample authority to the effect that a provision in a policy of insurance requiring the giving of notice or proof of loss within a specified time will be enforced regardless as to whether it became reasonably possible to have given such notice or proofs within the time specified. [See Hatch v. United States Casualty Co. (Mass.), 14 L. R. A. (N. S.) 503.] However, we think the better considered cases rule differently. They hold to the effect that if the circumstances and conditions surrounding the transaction show that it was impossible to give notice, or furnish the proof, within the time specified, its giving will be excluded, and it is sufficient if given or furnished within a reasonable time after it can be given. [See Hilmer v. Western Trav. Acc. Ass'n, 27 L. R. A. 319 and notes; Hayes v. Cont. Cas. Co., 98 Mo. App. 410; Rosenberry v. Am. Benev. Ass'n, 142 Mo. App. 552, 561.] In Soukup v. The Employers' Liability Assur. Corp. etc., 341 Mo. 614, quoting from another Missouri case, the Supreme Court said: l. c. 627: "We think the assured would not be required, under the reasonable rule of construction we are discussing, to give the assurer notice until such time as the facts of the injury and its progress began to suggest to a person of reasonable care and prudence that a possible liability of the assured to answer in damages lurked in them . . . Frequently an injury, apparently too trivial to cause any damage or inconvenience, develops into a most serious phase. The duty of the assured in such instances with respect to giving notice is performed if he gives notice within a reasonable time after the injury first takes on a serious aspect, an aspect suggestive of a possible claim for damages."

These authorities recognize the rule, to the effect, that the law allows persons to enter into contracts as they please, and when a party, by his own contract, creates a charge or duty upon himself, he is bound to make it good, because he might have provided against any accident or the like by his contract. Yet, in cases requiring notice or proof of loss, disability or death, it is held that a reasonable interpretation of the contract will be given and, unless there is an expressed condition in the policy requiring a different interpretation, the courts will not presume that the parties intended the requiring of the insured to do something impossible, under the circumstances, in

view of the character of these stipulations. [See Hayes v. Cont. Cas. Co., *supra*, l. c. 415, 416; Rosenberry v. Benev. Ass'n, *supra*, l. c. 561.]

However, the contract should be given a reasonable interpretation not only to avoid working an injustice as to the plaintiff but, also, as to the defendant and, we do not think, that merely because the policy gives plaintiff up to the expiration of a year to make the proof after the happening, it follows that he should be given a whole year, after his disability was discovered, in which to make the proof. We think that the rights of both parties are better preserved by a requirement that plaintiff make proof of his disability within a reasonable time after its discovery, and this seems to be the rule in this State. [See cases cited on this point.]

Ordinarily, the question as to whether notice or proof was given or made within a reasonable time would be for the jury, but where all reasonable persons would conclude that notice or proof was not given or made within that time, under all of the circumstances, then it becomes a question of law for the court.

The situation presented to plaintiff upon the discovery of his total and permanent disability was similar to that of an insured with a policy providing that "immediate" notice shall be given to the insurer of disability or death. In such policies the word "immediate" is construed to mean within a reasonable time. [Hogstrom v. Am. Fid. Co. of Montpelier, Vt., 137 Minn. 391; Foster v. Cas. Co., 40 L. R. A. 833.] Of course, what is a reasonable time depends upon the circumstances of the case. In the Railway Passenger Co. of Hartford v. Burrell, 44 Ind. 460, it was held that, under the circumstances of that case, notice given six days after the accident was not furnished within a reasonable time. In Trask v. The State Fire & Marine Ins. Co., 29 Pa. 198, it was held that notice given after eleven days was not reasonable. In Foster v. Cas. Co., *supra*, twenty-nine days. In Katzenstein v. Fid. & Cas. Co. of N. Y., 96 N. Y. S. 183, nearly a month. In Quinlan v. P. W. Ins. Co., 133 N. Y. 356, thirty-three days. In Hogstrom v. Am. Fid. Co., *supra*, fifty-two days. In Ermentrout v. Girard Fire & Marine Ins. Co., 63 Minn. 305, nearly sixty days, and Oakland v. Am. Fid. Co., 190 Mich. 74, three months.

Under all of the circumstances present in the case at bar, if defendant was not notified of plaintiff's claim, and did not deny liability until more than three months after it was discovered that he had received a total and permanent disability (and plaintiff admits, in his brief, this may have been the case), then, we think that the time for the furnishing of the proofs had expired, as a matter of law, when defendant denied liability and that there was no waiver on defendant's part in denying liability when it did. [See Propst v. Capital Mutual Association, 233 Mo. App. 612; Grafe v. Fid. Mut. Life Ins. Co., 84 S. W. (2d) 400; Pru. Ins. Co. of Am. v. Falls, 87 S. W. (2d) 567.]

However, plaintiff wholly failed to prove that his total and permanent disability was not discovered even sooner than three months before the denial of liability for the reason that he did not put on the witness stand the doctors who first treated him, but only the physician who saw him for the first time more than a year after the accident. Even this doctor's testimony is indefinite as to when he discovered the disability. Consequently, from all that the record shows, the disability may have been known for more than a year prior to the date plaintiff says that the defendant waived the proof of loss. The burden was upon plaintiff to show that he furnished the proof in time, or, that it was waived. This he failed to do and, consequently, defendant's instruction in the nature of a demurrer to the evidence should have been given.

As the case may be retried it is proper to pass upon other points raised by the defendant. In this connection it is urged that the court erred in permitting Dr. Irwig to testify to matters based on hearsay and matters not in evidence. None of the hospital records was introduced in evidence. Under the circumstances, we think it was clearly erroneous for the court to permit Dr. Irwig to express his opinion that plaintiff's disability began on February 10, 1937. [Oesterle v. Kroger Gro. & Bak. Co., 141 S. W. (2d) 780.]

There was no reversible error, however, in the action of the court in excluding the testimony of other employees of the Biscuit Company, to the effect, that they received new certificates and were aware of the change in the insurance plan. [Howell v. Sherwood, 242 Mo. 513; Funsch v. Stevenson et al., 223 S. W. 593.]

At another trial the court should not give an instruction similar to plaintiff's instruction No. One, which purported to cover the entire case and direct a verdict. This for the reason that it failed to submit that plaintiff, by reason of his disability, will presumably be continuously prevented for life from engaging in any occupation or performing any work for compensation of financial value, or the equivalent. The instruction, in this connection, merely submits that the jury find "that plaintiff became totally and permanently disabled." This did not submit the issue in accordance with the provisions of the policy. [Pollock v. Mo. State Life Ins. Co., 123 N. W. (2d) 212; Martin v. Travelers' Ins. Co., 247 S. W. 1024.] The instruction also was erroneously given because it failed to submit the issue as to whether defendant waived the furnishing of proofs of disability within the time required, under all of the circumstances. The instruction on the question of furnishing proof merely had the jury find that plaintiff made demand for payment for disability and that no proofs of claim were furnished by defendant. This, of course, was no submission of the real issue. Aside from this, there was no duty under the contract on defendant to furnish proof of claim. [Propst v. Capital Mutual Ass'n, *supra*, l. c. 633.]

If, at another trial, plaintiff is able to make out a case no error will be committed in the submission to the jury of the statutory penalties for vexatious refusal to pay the claim. After our decision in the Butler case, there was no justification for the position taken by the defendant in its letter denying the claim. The contentions that the letter of plaintiff's attorney, notifying defendant of plaintiff's disability, did not constitute proof of liability, and that no proof was tendered within the time required by the policy, and the like, are different than that assigned for nonliability in defendant's letter. [See Block v. U. S. Fid. & Guar. Co., 290 S. W. 429.]

The judgment is reversed and the cause remanded. All concur.