MARGUERITE A. NICK v. TRAVELERS INSURANCE COMPANY.—185 S. W. (2d) 326.

Kansas City Court of Appeals. January 22, 1945.

1182

*Clay C. Rogers, Mosman, Rogers, Bell & Conrad* for appellant.

*Clarence C. Chilcott* and *Leo A. Spalding* for respondent.

1184

DEW, J.—This is an action brought by plaintiff to recover insurance on account of the death of her husband Joseph A. Nick, Jr., who, at the time of his death, held Certificate No. 117915-X, issued to him by the defendant under its group insurance policy No. G-3940, issued to his employer The Great Atlantic and Pacific Tea Company. The verdict of the jury below was in favor of the respondent, and judgment was accordingly therein rendered in her favor for $4312, from which appellant has appealed.

For brevity, the deceased employee will herein be referred to as the "employee," or the deceased," and his said employer as the "employer."

Plaintiff's amended petition on which the cause was tried in substance alleges that on June 1, 1931, and for more than six months prior thereto, the said deceased was an employee of and actively engaged at work for said employer, and was at all times until the date of his death October 18, 1932, the husband of respondent; that on June 1, 1931, for valuable consideration, defendant contracted to insure the life of the said deceased in the sum of $3000, and upon his death to pay said amount to respondent; that defendant further agreed that if said deceased, before having attained the age of sixty years, became wholly disabled by bodily injuries and thereby permanently, continuously and wholly prevented for life from engaging in any occupation or employment for wages or profit, to pay said deceased the sum of $3000 in certain installments, and in the event of his death, then to pay the same to the beneficiary designated, the plaintiff; that on October 18, 1932, while said insurance contract was in full force and effect and before said deceased had attained the age of sixty years, he was so injured as to become wholly, permanently and continuously disabled from engaging in any occupation

or employment for wages or profit and so remained until he died on said October 18, 1932; that plaintiff and deceased had duly performed all terms and provisions of said contract required of them to be performed and that defendant had refused to pay said sum of $3000, or any part thereof; that said refusal was vexatious; that by reason of the premises defendant is indebted to the respondent for $3000, with interest at 6 percent per annum from October 18, 1932 to date of judgment, for which respondent prayed, with costs.

Defendant answered the plaintiff's said amended petition and alleged, in substance, that it did issue to said employer, prior to September, 1932, said group policy, effective December 31, 1925, and did issue to said deceased on or about June 1, 1931, said certificate, but that said certificate was issued in accordance with and was subject to the terms of said group policy. Defendant then denied generally all of the allegations of the petition.

Further answering, the defendant denied that said certificate constituted a contract of insurance or was in effect on the 18th day of October, 1932, and set forth that the policy provided as follows:

"Termination of Insurance:—The insurance of any Employee covered hereunder shall end when his employment with the Employer shall end except in a case where at the time of such termination the Employee shall be wholly disabled and prevented by bodily injury or disease from engaging in any occupation or employment for wage or profit. In such case the insurance will remain in force as to such Employee up during the continuance of such disability for the period of three months from the date upon which the Employee ceased to work and thereafter during the continuance of such disability and while this policy shall remain in force until the Employer shall notify the Company to terminate the insurance as to such Employee. Nothing in this paragraph contained shall limit or extend the Permanent Total Disability Benefit to which an Employee shall become entitled under this policy."

Further answering, the defendant alleged that the deceased left the employment of said employer on September 17, 1932; that his employment with said employer thereupon ceased and terminated; that he was not reemployed by said employer subsequent to September 17, 1932; and on said latter date said employer notified defendant to terminate the insurance issued to said deceased, and that said insurance was terminated and canceled at that time by said employer and by the defendant.

Further answering, the defendant alleged that the policy contained the following provisions:

"1. Permanent Total Disability Benefit:—If any Employee shall furnish the Company with due proof that while insured under this policy and before having attained the age of sixty, he has become wholly disabled by bodily injuries or disease, and will be permanently,

continuously and wholly prevented thereby for life from engaging in any occupation or employment for wage or profit, the Company will waive further payment of premium as to such Employee and pay in full settlement of all obligations to him under this policy the amount of insurance in force hereunder upon his life at the time of the receipt of due proofs of such disability, in a fixed number of instalments chosen by the Employer from the table in the paragraph entitled 'Modes of Settlement,' the first instalment to be paid immediately upon receipt of due proofs of such disability.''

The defendant further answered that said deceased at no time furnished defendant with due proof or any kind of proof that he had received injuries which permanently, continuously and wholly prevented him for life from engaging in any occupation for wage or profit, and that at the date his employment with said employer terminated on September 17, 1932, the said employee was not wholly disabled or prevented by bodily injury or disease from engaging in any occupation or employment for wage or profit.

Plaintiff's reply was a general denial.

The orginal employment of the deceased by said employer stands admitted, as does the fact of his death on October 18, 1932. Likewise, as seen from the pleadings, noted above, the issuance of said group policy and certificate is admitted.

Plaintiff's evidence shows that for more than six months prior to September, 1932, the deceased had been in the employ of said employer at its warehouse in Kansas City, Missouri; that he was a baker, and at the time in question, his duties were that of a molder, that is, to place dough in baking containers or utensils in such a manner as to mold or form the bakery products properly; that at the time in question he was under the immediate supervision of the foreman Ray Rogers, over whom was the plant superintendent Leonard Chairelli, who himself, was subject to the superior authority of Fred C. Rose, warehouse superintendent. The deceased had been laid off on two occasions prior to the episode described in the evidence which defendant contends constituted the discharge of the deceased; that on September 23, 1932, the deceased and said plant superintendent were observed to be engaged in a heated dispute and the deceased ''throwed some bread in the pan, not trying to put it in straight;'' that Chiarelli lost his temper and told the foreman to ''lay Joe Nick off for the time being until he cools off;'' that the deceased returned to his home that evening and gave his wife the full amount of his pay and gave the appearance of being very much worried. Both the foreman, Ray Rogers, and the plant superintendent, Chiarelli, were deceased at the time of the trial. That following September 23rd, deceased just stayed around at home, and there was no evidence of his making any attempts to obtain employment elsewhere. The wife of Ray Rogers, the foreman, was accustomed to procure bakers for her husband when needed

at the plant and at his request got word to deceased to come over to the foreman's house on a Saturday night to get a day's pay; (The day's pay was for extra work on Labor Day) ; that pursuant to that call, deceased and his wife, the plaintiff, called at the foreman's place of residence; that the foreman then paid deceased one day's pay and at that time the deceased asked the foreman when he (deceased) was going back to work, and that if he was not going back right away, he wished to put his name on the jobber's list at the Labor Temple; the foreman replied that: ''Well, I will call you back in a couple of days;'' that on some subsequent date the foreman told his wife to call the deceased back to work; that she telephoned to the home of deceased, but did not talk to him personally, but had a conversation with the wife of the deceased; this telephone conversation was some two weeks after the day's pay had been delivered to the deceased.

On October 18, 1932, the automobile in which said employee was riding collided with a bridge, resulting in the fatal injuries to the employee, from which he died on the same day.

About two weeks following the death of the employee, the plaintiff called at the offices of the employer to obtain information in regard to his employment and insurance record, and was referred to a Mr. Miller, office manager, who handled all insurance, but she never did see any of such records. The respondent introduced in evidence the answer of the defendant dated November 13, 1935, for the purpose of showing the date of the refusal of the defendant to pay the claim sued upon.

The group or master policy in question was effective December 31, 1925, the material parts of which are as follows:

### ''THE TRAVELERS INSURANCE COMPANY

''Hartford ,Connecticut

''By this Policy of Insurance Agrees to Pay Death Benefit at the Home Office of the Company in Hartford, Connecticut,

'' (a) the amount determined by the plan of insurance specified in the application for this policy immediately upon receipt of due proofs of the death of any Employee of The Great Atlantic & Pacific Tea Co. (New Jersey) and/or its subsidiary and affiliated companies named in said application (Hereinafter called the Employer) insured under the plan aforesaid in accordance with the provisions hereinafter contained provided such death shall occur during the term of this policy, or of any renewal hereof, or

''Permanent Total Disability Benefit—(b) the amount determined by the plan of insurance aforesaid as the Permanent Total Disability Benefit, when and as any such Employee shall become entitled thereto in accordance with the paragraph entitled 'Permanent Total Disability Benefit.'

''Premium—This policy is issued in consideration of the application of the Employer, which is made a part hereof and a copy of which

is attached hereto, and of the payment of the premium determined by estimate of the amount of insurance upon the Employees insured hereunder according to the plan of insurance aforesaid and the schedule of rates hereinafter contained, and of the further payment of such premiums as may be found to be due in accordance with the paragraphs entitled 'Premium Computation and Adjustment,' and 'Renewal Privilege.'

"Date Effective—This policy shall be effective from the 31st day of Dec., 1925 for a term of one year beginning and ending at 12:01 A. M., standard time at the Employer's address, from which date all insurance years and months shall be computed, and may be renewed . from year to year as hereinafter provided.

Provisions.

"1. Permanent Total Disability Benefit:—If any Employee shall furnish the Company with due proof that while insured under this policy and before having attained the age of sixty, he has become wholly disabled by bodily injuries or disease, and will be permanently, continuously and wholly prevented thereby for life from engaging in any occupation or employment for wage or profit, the Company will waive further payment of premium as to such Employee and pay in full settlement of all obligations to him under this policy the amount of insurance in force hereunder upon his life at the time of the receipt of due proofs of such disability, in a fixed number of instalments chosen by the Employer from the table in the paragraph entitled 'Modes of Settlement,' the first instalment to be paid immediately upon receipt of due proofs of such disability. Any instalments remaining unpaid at the death of the Employee shall be payable as they become due to the beneficiary designated by such Employee. Such remaining instalments may be commuted into one sum on the basis of interest at the rate of three and one-half per cent per annum.

.   .   .   .

"2.   .   .   .

"3. Employee's Individual Certificate:—The Company will issue to the Employer for delivery to each Employee whose life is insured hereunder an individual certificate setting forth a statement as to the insurance protection to which he is entitled, to whom payable, and containing provision to the effect that in case of the termination of the employment for any reason whatsoever the Employee shall be entitled to have issued to him by the Company without further evidence of insurability, and upon application made to the Company within thirty-one days after such termination and upon the payment of the premium applicable to the class of risks to which he belongs and to the form and amount of the policy of his then attained age, a policy of life insurance, in any one of the forms customarily issued by the Company, except term insurance, with permanent total disability benefit equivalent to that provided hereunder, in an amount

equal to the amount of the Employee's protection under this policy at the time of the termination of his employment.

"4. Reports of Registration Data by Employer:—The Employer shall furnish the Company monthly with the names of all Employees who shall become eligible to insurance hereunder together with the names of the beneficiaries of such Employees and such data as may be necessary to determine the amount of insurance and the amount of premium therefor and the Employer shall likewise furnish the Company with the names of Employees whose insurance shall be terminated with the date of termination of insurance.

"5. Termination of Insurance:—The insurance of any Employees covered hereunder shall and when his employment with the Employer shall end except in a case where at the time of such termination the Employee shall be wholly disabled and prevented by bodily injury or disease from engaging in any occupation or employment for wage or profit. In such case the insurance will remain in force as to such Employee during the continuance of such disability for the period of three months from the date upon which the Employee ceased to work and thereafter during the continuance of such disability and while this policy shall remain in force until the Employer shall notify the Company to terminate the insurance as to such Employee. Nothing in this paragraph contained shall limit or extend the Permanent Total Disability Benefit to which an Employee shall become entitled under this policy.

Temporary lay-off or leave of absence for reasons other than physical disability as aforesaid shall not be considered as termination of employment for the purpose of this insurance unless the Employer shall so elect.

"6. . . .

"7. . . .

"If the premiums paid for any period shall be less than the premiums so computed, the Employer shall pay the additional amounts to the Company when and as such computations shall be made and stated to him; if more, the Company shall return the excess to the Employer with such statement.

"8. Premiums: Where and How Payable:—Premiums shall be payable at the Home Office or to an authorized agent of the Company upon presentation of statement of premium due in exchange for a receipt signed by the President or a Secretary and countersigned by an authorized agent of the Company, and may with the assent of the Company be paid semi-annually, quarterly or monthly at the rate of 50.5 per centum, 25.5 per centum, or 8.58 per centum respectively, of the annual premium, as the case may be.

"9. Renewal Privilege:—This policy may be renewed from year to year at premiums to be computed by the Company in accordance with the paragraph entitled 'Premium Computation and Adjustment'

and payable in the same manner as the premium for the first year. The schedule of rates hereinafter contained shall be used in such computation of renewal premiums for the number of years designated in the application of the Employer. Thereafter the renewal premiums shall be computed upon the basis of the schedule of rates then determined by the Company upon the basis of its experience.

"10. Grace Period:—A grace of thirty-one days during which the policy will remain in full force will be allowed for the payment of all premiums except the first.

"14. Entire Contract:—This policy, the application of the Employer and the individual applications, if any, of the Employees insured shall constitute the entire contract between the parties. All statements made by the Employer or by the individual Employees shall, in the absence of fraud, be deemed representations and not warranties, and no such statement shall be used in defence to a claim under the policy unless it is contained in a written application.

"Endorsement To Be Attached To And Form A Part Of Group Life Policy No. G-3940 (Dated January 18, 1926).

"It is hereby agreed that in addition to the insurance provided under said Policy No. G-3940, as shown in the application attached to and forming a part of said Group Life Policy, the Employees of the Employer shall be insured in accordance with the following plan:

"5. Each Employee whose employment commences after the effective date of this endorsement will be insured from the date on which he completes six months of service, provided he has, while actively employed, filed written authorization for the Employer to deduct from his wages, the required amount to apply toward the premium for this insurance.

"9. The insurance of each Employee covered under this plan shall end if and when, prior to the termination of his employment, he notifies the Employer to make no further deduction from his pay to apply toward the premium for this insurance.

"10. Any insurance under the Additional Insurance Plan is subject to the condition that at least seventy-five percent of the Employees who have completed the required period of service shall be insured under this plan, and that no Employee shall be charged more than sixty cents per month per thousand dollars of insurance to apply toward the premium for such insurance.

"11. The amount of insurance as to each Employee covered under this plan will be determined by Class and Annual Wage or Salary as follows: . . .

"Nothing herein contained shall be held to alter, vary or affect any provision or condition of the policy other than as above stated. . . .

"Endorsement To Be Attached To And Form a Part Of Group Life Policy No. G-3940, As Amended . . . (Dated April 26, 1926).

1194

"It is hereby agreed that Item 5 of the endorsement dated at Hartford, Connecticut as of January 18, 1926 . . . be and the same hereby is annulled. as of the effective date of this endorsement and the following item substituted therefor: '5. Each Employee whose employment commences after the effective date of this endorsement will be insured from the first day of the calendar month next following the date on which he completes six months of service, provided he has, while actively employed, filed written authorization for the Employer to deduct from his wages the required amount to apply toward the premium for this insurance.'

"Nothing herein contained shall be held to alter, vary or affect any provision or condition of the Policy other than as above stated.

"This endorsement shall be effective as of December 31, 1925. . . ."

(There were other endorsements not material herein).

Respondent's Exhibit 24, being the certificate of insurance in question, was as follows:

"Additional                                                                    Insurance

"THE TRAVELERS INSURANCE COMPANY
"Hartford, Connecticut

"Group Life Policy                                                     Certificate
"No. G 3940                                                            No. 117915-X

"This is to Certify that under and subject to the terms and conditions of a Group Life Policy of Insurance No. G 3940, issued and delivered to The Great Atlantic & Pacific Tea Company And/Or Its Subsidiaries (Hereinafter called the Employer) by The Travelers Insurance Company, Hartford, Connecticut, the life of Joseph A. Nick, Jr. (Hereinafter called the Employee) is insured initially for the sum of Three Thousand (3000) Dollars, payable to Marguerite I. Nick—Wife of Beneficiary if death shall occur during the continuance of said policy while the Employee is insured under this Certificate.

"The insurance in force on the life of the Employee is determined by annual wage or salary as stated on the third page of this Certificate and made a part hereof.

"The insurance of any Employee covered hereunder shall end when his employment with the Employer shall end or prior thereto when the Employee shall notify the Employer to make no further deductions from his pay to apply toward the premium for this insurance, except in a case where at the time of termination of employment the Employee shall be wholly disabled and prevented by bodily injury or disease from engaging in any occupation or employment for wage or profit. In such case the insurance will remain in force as to such Employee during the continuance of such disability for the period of three months from the date upon which the Employee ceased to work and thereafter during the continuance of such disability and while this policy shall remain in force until the Employer shall notify the Com-

pany to terminate the insurance as to such Employee. Nothing in this paragraph contained shall limit or extend the Permanent Total Disability Benefit to which an Employee shall become entitled under this policy.

"Conversion Privilege<br>(Taken from the Group Life Policy)

"Any Employee of the Employer covered under this group policy shall, in case of the termination of employment for any reason whatsoever, be entitled to have issued to him by the Company without further evidence of insurability, and upon application made to the Company within thirty-one days after such termination and upon the payment of the premium applicable to the class of risks to which he belongs and to the form and amount of the policy at his then attained age, a policy of life insurance, in any one of the forms customarily issued by the Company, except term insurance, with Permanent Total Disability Benefit equivalent to that provided hereunder, in an amount equal to the amount of the Employee's protection under this policy at the time of the termination of his employment.

"The provisions of the policy for Permanent Total Disability Benefits are printed upon the second page of this Certificate and made a part hereof.

"The Travelers Insurance Company,<br>"H. E. Critchfield,<br>"Department Secretary.

"Date June 1, 1931          Specimen
"09811

"This Specimen Certificate was prepared May 5, 1942 from information appearing in Group Department registration records.

"Permanent Total Disability Benefits<br>(Here appears copy of Paragraph 1 of the policy.)

"This Certificate shall not apply to an Employee who has completed less than six months of service."

(Signatures).

The plaintiff testified that she had never received any refund of premium.

A stipulation had been entered into by the parties hereto that the statement therein contained might be read in evidence in this case with the same force and effect as a deposition of H. W. Adams at Hartford, Connecticut. That statement substantially is that said Adams was assistant secretary of the Group Department of the defendant; the records of the company pertaining to such insurance are kept in his office; that on December 31, 1925, defendant entered into a contract of insurance with the above employer and issued said Policy No. G-3940; that thereunder the employer designated an employee to be covered by said policy by furnishing defendant with cards stating the employee's name, the beneficiary, date of birth, date

of employment and other information required; that a certificate under this policy is issued to the individual employee after the above cards are received, containing the information mentioned. The company furnishes to the employer, the insured, under the master policy, record cards, one yellow and one white; that when those cards are filled out by the employer they are returned to the defendant where entries are made by defendant and the yellow card is returned to the employer. When the insurance of an individual employee is changed or canceled through termination of employment, such information is indicated by the employer on the yellow card and forwarded to the Home Office of defendant, where this information is entered on the white card in the defendant's files. The amount of the premium paid by the employer is estimated and paid quarterly in advance, in December, March, June, and September of each year, and at the end of the policy year the employer sends all yellow cards on employees who hold certificates to defendant's Home Office. Thereupon an audit is made and the exact amount of the premiums underpaid or overpaid is adjusted. Yellow and white cards above referred to are periodically sent by the employer to the defendant on the occasion of increase, renewals, or for termination and cancelation of insurance. When an employee's insurance is terminated because of discharge from or voluntarily quitting the employer's services, that information is noted on the yellow card and sent to defendant's Home Office.

The statement of Mr. Adams further alleged that in the case of Joseph A. Nick, Jr., defendant's record disclosed from the white card (Exhibit D-A1) that he had two certificates of insurance under the above master policy, one originally for $300, which increased in value by reason of the rank of service, to $600, and another certificate of insurance in the amount of $3000, for which latter certificate deceased had authorized said employer to deduct $1.80 per month for monthly premiums and which said amount was deducted monthly from his pay check, the last deduction being made on Friday, September 3, 1932. The yellow card contains forms to be filled out by the employer relative to the termination of insurance and the reason therefor, with the date thereof, and a request that the employer send the same in to the defendant. The yellow card on the deceased was sent to the defendant by said employer, containing the information that deceased had left the company, and that the date of the termination of his employment was September 17, 1932 (Exhibit D-A2). The letters "L. C." placed on said card by the employer mean "Left Company." When this yellow card was received from the employer by defendant, containing the above information as to the termination of the employment of the deceased, the defendant entered notations in red ink upon the same, and also on the white card, showing that insurance on deceased was terminated as of the date when the deceased left the employer's company. The yellow card with the red

notations constitutes the employer's record card for the termination of the insurance. The entries on the cards as to the deceased are to the effect that his insurance was terminated September 17, 1932, as to both policies. The last monthly premium deducted from the pay of the deceased was on September 3, 1932, and was for that month, and that deceased paid no premium after that month. No premium was received by the defendant for deceased after September, 1932.

On both of the exhibits above mentioned in the statement of witness Adams, the last entry, as to both the free insurance and additional insurance records, was the letters "L. C.," followed by the amount of insurance, $600 in one, and $3000 in the other. On "D-A1," the white card, is noted: "Died 10-18-32." At the bottom "D-A2" also appears the following:

"Reason—'L. C. Date September 17, 1932. (Write 'L. C.' for Left Company.—'L. O.' for Laid Off, 'Death' for death—'Discontinued' for cessation of payment by employer and 'P. T. D.' for Permanent Total Disability.')"

Defendant's evidence further tended to show that the employer herein customarily used termination blanks for memorandum of an employee being discharged or leaving its employment. Defendant's Exhibit No. 28 was what is known as a "Departmental Termination Notice," which was made out by a witness who was at the time typist and clerk of the employer. That exhibit showed the name of Joseph Nick, his address as the Labor Temple, was dated 9-17-32, his position was noted as baker, rate $6.16 per day, and the "reason for termination" was shown to be "carelessness." No entries were made as to character of services nor length of services. The blank contains instructions "to be sent to employment department when properly approved and before employee leaves company' employ, when possible." It was signed "L. C. Chiarelli" as Superintendent or Department Head, and approved by "F. C. R., manager." The paper contains a designation as "Departmental Termination Notice." The upper righthand corner has been torn off.

The witness testified that Mr. Chiarelli instructed her to make out the above Departmental Termination Notice, which she did, and then took it and obtained thereon the initials of Mr. Chiarelli and Mr. Rose, the warehouse superintendent; that she never made out such notices when regular employees were tmporarily laid off; that the notice then goes to the cashier department, and does not thereafter leave the company's files. She testified that the company never gave any written notice of discharge to their employees, and none was given to the deceased because the company had no such notices to send. The warehouse superintendent testified that he had final authority and power to hire and fire the employees, and that after the departmental notice was made and approved by him, such person so discharged could not be rehired by any one without the witness's consent.

The defendant introduced the original petition in this cause for the purpose of showing that the case was originally brought on the death provisions of the policy rather than the provisions pertaining to permanent disability, of which no notice is shown in evidence of any disability, as required by such provisions.

The court refused appellant's peremptory instructions offered at the close of plaintiff's case and at the close of the evidence.

At the request of the respondent the court gave, among other instructions, the following instructions 1 and 2:

"1.

"The Court instructs the Jury that it is admitted that the Defendant insurance company issued its group insurance policy and certificate mentioned in evidence insuring the life of Joseph A. Nick in the sum of $3,000, payable to his wife Marguerite I. Nick as beneficiary. Therefore, if you find and believe from the evidence that Joseph A. Nick died on October 18, 1932, and at the time of his death he was in the employ of the Great Atlantic & Pacific Tea Company and that his employment with said company had not been terminated then your verdict should be for plaintiff and against the defendant in the sum of $3,000 to which you may add interest at the rate of 6% per annum from November 13, 1935, to this date not exceeding the sum of $1,312 as interest."

"2.

"The Court instructs the Jury that if you find and believe from the evidence that the insured Joseph A. Nick was only temporarily laid off and that both he and his employer understood that he was not to leave the service but was only temporarily relieved from the performance of such duties and was to continue his relationship with the Great Atlantic & Pacific Tea Company as an employee, then said Joseph A. Nick was not discharged and his employment with the Great Atlantic & Pacific Tea Company, did not terminate and he would be deemed at the time of his death to be in the employ of said company."

Appellant's Assignments of Error are as follows:

"I.

"The court erred in refusing the defendant's requested peremptory instruction "A" (R. 147) offered at the conclusion of the evidence on behalf of the plaintiff, and erred in refusing defendant's requested peremptory instruction "B" (R. 176-195) offered at the conclusion of all the evidence for the reason that plaintiff failed to prove that the insurance was in force at the time of the death of Joseph A. Nick, Jr., and because the proof conclusively showed that the insurance as to Joseph A. Nick, Jr., had been canceled prior to the time of his death; because the proof conclusively showed that no premium was paid on the insurance for the month of October, 1932, which was necessary to continue the insurance in force.

## "II.

"The court erred in refusing to give defendant's requested peremptory instruction "A" (R. 147) offered at the conclusion of plaintiff's evidence for the reason that the petition on which the case was tried was based upon the permanent total disability benefit provision of the policy and there was no proof which in any way sustained the allegation of the petition in that respect.

## "III.

"The court erred in refusing to give defendant's requested peremptory instruction "B" (R. 176-195) offered at the conclusion of all of the evidence for the reason that the petition on which the case was tried was based upon the permanent total disability benefit provision of the policy and there was no proof which in any way sustained the allegation of the petition in that respect.

## "IV.

"The court erred in giving plaintiff's instruction No. 1 (R. 177) for the reason that the instruction submitted the case to the jury on the life provision of the policy providing for death benefits, whereas the petition was based upon the permanent total disability benefits of the policy and therefore the instruction permitted a recovery on a theory outside of and beyond the allegations of the petition.

## "V.

"The court erred in giving plaintiff's instruction No. 1 (R. 177) for the reason that said instruction was erroneous in that it did not require the jury to find certain vital elements necessary to plaintiff's case namely, (a) that the premium was paid to carry the policy in force as to Nick and (b) that his insurance had not been terminated by his employer as it was empowered to do under the provisions of the policy."

Appellant's first Assignment of Error is based on its contention that the plaintiff failed to prove that the insurance was in force at the time of the death of the deceased; that the evidence conclusively shows that the same had been canceled prior to his death, and that no premium was paid for such insurance for the month of October, 1932, which was necessary to continue said insurance in force. For these reasons appellant maintains that the peremptory instructions should have been given.

As to the peremptory instruction offered at the close of plaintiff's case, appellant did not stand on the same but offered its evidence and proceeded to trial, and any error in refusing that instruction is not now available to appellant. [Porter v. Equitable Life Assur. Soc. of the United States, 71 S. W. (2d) 766.] Of course, if the insurance covering the deceased had effectively been canceled and was not in force at the time of his death, there was no right of recovery and the peremptory instruction at the close of all the evidence should not

have been refused. Whether such prerequisites for cancelation were established, we now consider.

The group policy in question is a contract between the defendant and his employer, for the benefit of the employees of such employer. The certificate, issued to and held by deceased is a mere statement furnished to him of the fact that he was insured under the policy in question. Whatever were the rights of the deceased under the policy were governed by the terms of the policy and it was the burden of respondent to establish that deceased was insured under said policy at the time of his death.

It was said in White v. Prudential Insurance Company of America, 235 Mo. App. 156, 127 S. W. (2d) 98, 102:

"It is held that a contract of group insurance is one between the insurer and the employer for the benefit of the latter's employees, and that the certificate of insurance which is issued to the individual employee is merely a statement to him that he is insured under the group policy. [Gallagher v. Simmons Hardware Co., 214 Mo. App. 111, 258 S. W. 16; Adair v. General American Life Ins. Co. (Mo. App.), 124 S. W. (2d) 657, 660.] It follows, therefore, that the rights of an employee or his beneficiary are to be determined under the provisions of the contract between the insurer and the employer, so that in an action upon a policy of group insurance, the burden is upon the plaintiff beneficiary to show that the deceased employee was insured under such policy at the time his death occurred. [Steffen v. Equitable Life Assur. Soc. (Mo. App.), 64 S. W. (2d) 302; Adair v. General American Life Ins. Co., supra.]"

The court said in Kingsland v. Missouri State Life Ins. Company, 228 Mo. App. 198, 66 S. W. (2d) 959, 1. c. 202, (Mo. App.):

"The contract in issue is one between two parties for the benefit of third parties, of which class the plaintiff is one. No doubt exists as to the plaintiff's right to sue, but the rule in such cases is: 'one who sues on a contract made for his benefit must accept the contract as it was made.'"

It is said in 13 C. J., page 712, sec. 819:

"One who sues on a contract made for his benefit must accept the contract as it was made."

Whether the occurrence of the dispute between the deceased and the plant superintendent when deceased was ordered off his work was on September 17th or September 23rd, 1932, respondent maintains that under the circumstances of that occurrence, and considering the subsequent conversations with the foreman, the employment of the deceased was not thereby terminated, but that he was only temporarily laid off; that the entry later made by the employer in its records as of September 17th to the effect that he had left the company, and its notice to that effect to the defendant as a notice of termination of employment and cancelation of insurance were insufficient without prior notice thereof to deceased.

It will be recalled that in paragraph 5, the policy provided that the insurance of any employee covered thereunder shall end when his employment with the employer shall end. The paragraph then provides for an exception, not here involved, giving to such employee certain privileges in event that at the time of such termination of employment the employee shall then be wholly disabled and prevented by bodily injury to engage in any employment for profit. In paragraph 3, the policy provides that in case of the termination of the employment for any reason whatsoever, the employee whose employment is so terminated shall be entitled to have issued to him by defendant, without further evidence of insurability, upon his application to the defendant therefor within thirty-one days after such termination and upon the payment of proper premium therefor, a new policy of life insurance described therein with permanent, total disability provisions, in an amount equal to the amount of the employee's protection under the policy at the time of the termination of his employment. It is to be borne in mind also that in said paragraph 5 of the policy it is provided that "temporary lay-off or leave of absence for reasons other than physical disability as aforesaid shall not be considered as termination of employment for the purpose of this insurance unless the Employer shall so elect."

The rights of an employee insured under group policies of insurance have been the subject of much discussion by the authorities and by the courts. Many group policies have different provisions and their construction has necessarily not been uniform, as a consequence of the dissimilarity in their provisions. In addition, it must be said the courts have not been in full accord in construing similar provisions of such policies in reference to the rights of the employee in the insurance contract, and the necessity of notice to him of termination of employment and modification or cancelation of the insurance.

We are especially here concerned with that type of group insurance policies known as contributory; that is, wherein it is required or contemplated that the insured employee contribute with his employer to the payment of the premiums. In some of the contributory policies it is not absolutely required that the employee contribute, but provisions are made that he may do so with certain maximum limitations upon his contribution. In other contributory policies, such as the one sued on in this case, it is not only contemplated, but required as a condition precedent, that the insured employee authorize the employer periodically to deduct from his pay check a certain amount, not to exceed the maximum specified, to apply on the premiums.

The great weight of authority is to the effect that such a policy as the one under our consideration gives to the contributing employee, although not a party to the policy itself, a vested interest in and to the policy in so far as it affects him, and gives rise to certain rights in him as to notice of termination of employment, and of any modification or cancelation of insurance thereunder affecting him.

In 29 Am. Juris., page 1033, section 1382, it is said:

"However, the cancelation of a group life insurance policy, *without notice to the employees* by the mutual agreement of the employer and the insurer is ineffective as to an employee insured under the policy, where the policy imposes burdens upon the employee, and requires the payment by him of a consideration for the protection and benefits he secures therefrom." (Italics supplied.)

In the case of Butler v. Equitable Life Assur. Soc. of the United States, 233 Mo. App. 94, 93 S. W. (2d) 1019, this court had before it the same question, although the group policy, in some immaterial respects, differed from the one in the case at hand. The policy in that case required:

"The cost of this insurance is to be borne jointly by the employer and the employee participating in this insurance."

The policy in the Butler case further placed a maximum on the amount of monthly contributions that the employee should contribute toward the monthly premiums. The insured in that case worked for the employer until April 25, 1933, when she was taken sick. She was totally disabled from April 29, 1933 until her death May 2, 1934, a period of over twelve months. Before her death suit was brought for the total disabilities under her policy. The suit was revived by her husband as administrator. The policy provided, among other things, that it could be terminated in two ways, viz: in the event the employee left the employ of the employer, or if the employee executed a written notice that he desired to discontinue his participation under said policy; and that if the employee left the employ of said employer he had certain rights of converting said policy into a policy of another form customarily issued by the insurance company. The deceased held a certificate from the defendant insurance company, setting forth substantially her protection thereunder. The insurance company undertook to show that the group policy had been canceled August 1, 1932, and a new group policy issued in its stead and place. The substitute policy omitted provisions for benefits in event the employee became permanently and totally disabled, but required the continuation of the payment by the employee of the same amount of premium as formerly paid, and did not increase the amount of the life insurance. The insurance company further attempted to show that the deceased had been given notice of the cancelation of the original policy and substitution of the new one, but this was denied by other witnesses. There was no showing that a new certificate had been issued to the deceased under the new policy, nor that the old certificate was demanded or surrendered.

The question in that case was whether or not it was necessary under the group policy, in order to cancel the same, to obtain the consent of the employee, or notify him of the fact that said policy was being canceled. Our court, stating that such question was then a matter

of first impression in this state, reviewed many authorities and came to the conclusion that the contract was one for the benefit of third parties, but that it departed from the ordinary contract of that nature in that it was based on considerations that must be paid by the third party. In other words, "the third parties to secure the benefits are compelled by the master policy of the contract to by their own act accept the provisions of the contract entered into and are bound, by the master contract and by the certificate issued to them, to pay a consideration for benefits inuring to them under the contract." We held in that case that the scope of such a contract contemplates more than a mere contract between parties for the benefit of a third party, in that the master contract provides first, for the consent, evidenced by application; and, second, a consideration to be paid by the third party for the benefits provided for in the contract. From this we determined in that case that the third party acquired a vested interest in the policy and the insurance. We further held that:

"As to such a group policy as is involved in this case, wherein the group policy itself imposes burdens upon the insured employee and provides for a consideration to be paid by the employee for the protection and benefits he secures thereunder, then and in such event, such an insured is entitled to notice of cancelation."

In Hayes v. Equitable Life Assur. Soc. of the United States, 235 Mo. App. 1261, 150 S. W. (2d) 1113, we approved of and followed the tenor and effect of said Butler case, supra.

In Williams v. Sun Life Assurance Company of Canada, 235 Mo. App. 741, 148 S. W. (2d) 112, we distinguished that case from the Butler case because in the former the policy did not require contributions toward the premiums by the employee, but all premiums were to be paid by the employer.

It cannot be said, under the policy in this case and under the evidence, that the employer was the agent of the employee so that notice and knowledge of the cancelation of his insurance might be imputed to such employee. [Emerick v. Connecticut General Life Ins. Co., 120 Conn. 60, 179 App. 335,, 105 A. L. R. 413.]

In the case of Poch v. Equitable Life Assur. Soc. of the United States, 343 Pa. St. Rep. 119, the court recognized the requirement of contribution by the employee among the terms of the policy as a special feature requiring notice to the employee of the intended cancelation or modification of the insurance. In that case the Butler case, supra, was cited with approval.

Under the policy in the instant case the insured employee, upon the termination of his employment, had the privilege, without further physical examination, within thirty-one days after such termination, to apply for and receive a policy at his then attained age for any one of various forms of insurance customarily issued by the company, except term insurance, with permanent total disability benefit equiva-

lent to such as he had had and in an amount equal to the amount of the employee's protection under the policy in effect at the time of the termination of his employment. It is clear that, in order to give effect to this privilege and the protection to the employee as contemplated by the provision, the employee must, of necessity, be apprised of the fact that his employment has been terminated, and of the cancelation of his existing group insurance. Without that knowledge, he would not know that he had become entitled to exercise that right, nor would he know that his existing protection under the policy had terminated, nor would he take any steps to avail himself of the privilege provided for his protection under such circumstances.

It is true that the terms of the policy must govern and justify its construction. As said in 29 Am. Jur., page 1033, section 1382:

"It is true that where the terms and conditions of a group insurance policy require the employer to certify to the insurer the names of those insured, and to pay premiums monthly for each employee insured, the failure to include an employee in the list insured and to pay premiums upon insurance for him precludes recovery against the insurer for such employee."

It will be noted that this statement of principle does not include the feature of compulsory contributions by the employee under the terms of the policy.

The policy in question provides that a temporary lay-off or leave of absence for reasons other than physical disability shall not be considered as termination of employment for the purpose of the insurance *unless the employer shall so elect*. Under such a provision the time is left uncertain as to when the employer, if at all, might conclude to consider a discontinuance of an employee's services as a termination of his employment. Such an election might be made on the day the employee discontinues his services, or may, as in many of the cases, be postponed by the employer to a date uncertain, or may not be exercised at all. Without notice to the employee this would tend to confuse if not to defeat, in many instances, the option afforded the employee for his continued protection, limited to the period specified in the policy. We believe that upon consideration of the policy in all its aspects, its purposes and intent, together with the evidence in this case, the deceased not only had a vested interest in said policy and insurance thereunder, but had further a right to notice that his employment had been terminated and that the insurance under said policy, in so far as it affected him, had been canceled for such cause.

In Powell v. Equitable Life Assur. Soc., 173 S. C. 50, 174 S. E. 649, the policy therein provided for the termination of the insurance upon the termination of the employment, with the exception that the employer could elect to consider employees temporarily laid off or temporarily disabled as still employed during such a period. The

employer used a card called "leaving slip," which was made out as part of the employee's employment record, and a notation was placed thereon "laid off until we can use her again." This was dated December 10, 1931. On the employer's insurance register the termination of her insurance was noted as February 1, 1932. The employee died February 27, 1932, without having returned to work. The court held that the trial court committed no error in leaving to the jury the question of employment and said:

"Since it was left by the terms of the group plan for the company to determine for itself whether an employee's discontinuance from its service should be regarded as a temporary lay-off or as a permanent severance from employment, it follows, obviously, that resort may properly be had to any attendant circumstances, or to precedents of custom or practice arising from similar situations, which are allowable in evidence as tending to throw light on the occurrence of the lay-off."

As to whether the employment of the deceased was terminated at the time that he was ordered to discontinue his services on September 17th or September 23rd, as the case may be, and in view of the subsequent conversations in evidence between the deceased and his foreman relative to an early resumption of his work, this question was a fact for the jury, and it is not our province to disturb their finding thereon. [Porter v. Equitable Life Assur. Soc. of the United States, 71 S. W. (2d) 766.]

The result is we cannot find that as a matter of law, the respondent failed to prove that the insurance was in force at the time of the death of the deceased in so far as any termination of employment or cancelation of the insurance are concerned, nor that it was forfeited by nonpayment of premiums.

Appellant further contends that its peremptory instruction offered at the close of all the evidence should have been sustained for the reason that the petition on which the case was tried was based upon the permanent total disability benefit provisions of the policy, and that there was no proof which in any way sustained the allegation of the petition in that respect. We believe the petition was sufficiently broad to authorize the recovery under the evidence, and that there is no merit in this point.

We hold that there was no error in refusing the peremptory instruction offered by defendant at the close of all the evidence.

The same objection is made as to Instruction No. 1 and for the same reason we believe that it was not erroneous under the allegations of the petition and under the evidence.

Appellant makes the further complaint that Instruction No. 1 was erroneous in that it did not require the jury to find that the premium was paid to carry the policy in force as to deceased, and that his insurance had not been terminated by his employer as it was

empowered to do under the provisions of the policy. The evidence relative to the claimed termination of employment was heard by the jury and the jury was required by Instruction No. 1 to find that the employment had not been terminated before it could find for the plaintiff. There is no merit in that contention of appellant.

It was admitted that the employee's portion of the September premium had been deducted. He could not have paid further premiums directly unless his employment had been terminated, as we have held, with notice, and then only upon his taking out a new policy under the terms of the group policy, nor did he have any notice of the cancelation, which, as we have held, rendered it ineffective as to him. Thus it was still the duty of the employer to pay the premium for October, as to which it had thirty-one days grace. Thus the employee's insurance was not forfeited by nonpayment of premium at the time of his death on October 18th. Instruction No. 1 was not erroneous.

We believe that the judgment of the Circuit Court should be affirmed. It is so ordered. It is our opinion that the above decision conflicts with the decision of the St. Louis Court of Appeals in the case of Longley v. Prudential Insurance Company of America, 161 S. W. (2d) 27, and for that reason this cause is certified and transferred to the Supreme Court of Missouri. *Dew, J.*, concurs.