MR. JUSTICE SHEEHY,
dissenting:
I join with Justice Morrison in his dissent, and I wish to make a further statement concerning the flat holding of the majority that “Blue Cross is not subject to the Montana Insurance Code”.
It will come as a bit of surprise to Blue Cross premium payers, including several thousand state employees, that the contract under which they make premium payments, or have them deducted from their paychecks, is not a health insurance policy, but something else that looks very much like insurance.
It is said that in Eden, Adam was given the job of naming all the animals. When he named the elephant, he was asked “Why elephant?” Adam responded, “Well it looks like an elephant.”
The Blue Cross contract looks so much like insurance that the majority in its opinion cannot help referring to it as a “policy”, or to the benefits as “coverage”, or that the coverage in the American Dental Association policy should be “insurance of precisely the same type in the same kind of insurer” to determine admissibility of evidence in this case.
What Blue Cross does not look like is a “health service corporation”, the kind of corporation relied on by the majority to take Blue Cross out of the operation of the insurance code. Blue Cross offers no medical or health service of any kind, even to the issuance of aspirin.
What 'Blue Cross does offer are benefits or indemnity for medical providers, in return for premiums assumably based on the actuarial likelihood that such bills will be incurred. It is nothing if it is not an “insurer”. California Physicians’ Service v. Garrison (1946), 28 Cal.2d 790, 172 P.2d 4. See People v. CMA et al (1967), 61 Cal.Rptr. 852.
Blue Cross is statutorily an insurer, writing insurance contracts. “Insurance” is a contract whereby one undertakes to indemnify another or pay or provide a specified or determinable amount or benefit upon determinable contingencies. Section 33-1-201(5), MCA. “Insurer” includes every person *472 engaged as indemnitor, surety, or contractor in the business of entering into contracts of insurance. Section 33-1-201(6), MCA.
Blue Cross is writing “insurance” contracts, by statutory definition. It is an “insurer” by statutory definition. If in earlier years the legislature interpreted Blue Cross as something other than an insurer, it corrected that error in 1975 when it brought Blue Cross and all other “health service organizations” under the aegis of the commissioner of insurance. Chapter 30, Title 33, MCA. Under Chapter 30 of the insurance code, Blue Cross is now amenable, as it always has been, to all the provisions of the insurance code, except where the provisions of Chapter 30 are incompatible with the remainder of Title 33, MCA. (Section 33-30-102, MCA.) The majority has been led merely upon suggestion, as Hamlet led Polonius, to see a “camel” or a “whale” in what is really an insurer.
Likewise, the majority sees something other than an insurer in dismissing as dicta the effect of our decision in Fassio v. Montana Physician’s Service (1976), 170 Mont. 320, 553 P.2d 998. That case involved an insurance contract issued by Montana Physicians Service, another “health service organization”. The Fassio case turns upon the application to that case of statutory requirements found in the insurance code. Section 40-4102(2), R.C.M. 1947 (now section 33-22-502(2), MCA) provided for delivery to the employee covered in the group contract a summary statement of the “essential features of the insurance coverage . . .” The turning point of our decision in Fassio was that there must be notice of the coverage provided so as to allow the insured to procure excluded coverage elsewhere. 553 P.2d at 1001, 1002. The case this Court relied on in deciding Fassio was Hayes v. Equitable Life Assur. Soc. (1941), 235 Mo.App. 1261, 150 S.W. 2d 1113, an insurance case. 553 P.2d at 1002.
In this case, the majority dismisses the clear application of insurance law to a health service organization contract in Fassio as “dicta”. Why? Because “briefs in that case made no reference whatsoever to the insurance code”. Briefs, and not the language in the published opinions of this Court, are now *473 deciding what is “dicta” for the majority here.
Justice Morrison, in his accompanying dissent, has set forth in full instruction no. 17. That instruction is based on section 40-4102(2), R.C.M. 1947 (now section 33-22-502(2), MCA). It was properly given by the court.
It is clear that the majority has nullified the application of section 40-4102(2), R.C.M. 1947 (now section 33-22-502(2), MCA) to Blue Cross in direct opposition to our holding in Fassio, where we said that section 40-4102(2), R.C.M. was controlling. The trial court in this case, reading Fassio had no choice but to give instruction no. 17. It was the decided law. No district judge could have the prescience necessary to see this same court make “dicta” out of the controlling statute and the decided case. So much for stare decisis.
The people of Montana can now be well advised, if the flat statement of the majority is taken at face value, that there is no law in Montana to protect them from the vagaries of Blue Cross when it decides their coverage.
The repudiation by the majority of Fasio, though not directly stated, is legally traumatic, but even that is overpassed by the majority’s broadaxe treatment of the long-cherished collateral source rule.
There can be no logic in applying a rule for the measure of damages as authority for the admissibility of the receipt by Webers of benefits from another insurance policy. If Blue Cross were trying to demonstrate that the same coverage claimed by Webers could have been obtained elsewhere for a different premium, then perhaps under the majority’s citation of Appleman, the evidence of the cost of such claimed coverage would be admissible to establish a measure of damages. Blue Cross was not trying to establish a measure of damages in offering the evidence that Webers had received $13,000 from another insurer. Its effort was to reduce Webers’ claimed damages by showing Webers had received moneys from a collateral source. Until now, this Court has never allowed that.
The only real issue in this case is whether the jury acted excessively in granting the amount of punitive damages we find *474 here. The majority has sidestepped that issue, but the result is some very bad law.