· DONIE WHITE (PLAINTIFF), RESPONDENT, v. THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, A CORPORATION (DEFENDANT), APPELLANT.—127 S. W. (2d) 98.

St. Louis Court of Appeals. Opinion filed April 4, 1939.

Motion for rehearing overruled April 18, 1939.

Writ of Certiorari denied by Supreme Court June 6, 1939.

*Fordyce, White, Mayne, Williams & Hartman* and *R. E. LaDriere* for appellant.

*Ralph W. Hyatt* of counsel.

*S. E. Garner, S. R. Redmond* and *Henry D. Espy* for respondent.

BENNICK, C.—This is an action by plaintiff, the widow and designated beneficiary of Stephen White, to recover upon a policy of group insurance which was issued by defendant to Pullman, Incorporated, for the benefit of the latter's employees, of whom White was one at the time of the issuance of the policy on June 1, 1933. Thereafter White was intermittently employed by the Pullman Company in its active service until January 25, 1936, when he was compelled to quit work because of illness. It was a conceded fact that following the termination of his active employment he kept his insurance in force until June 1, 1936, and the issue in the case was whether he was still insured under the policy at the time of his death on January 16, 1937.

Judgment was entered for plaintiff for the aggregate sum of $3,926, and defendant's appeal to this court has followed in the usual course.

The master policy provided that in consideration, among other things, of the Pullman Company's payment of a premium comprising the sum of the several premiums for the individual amounts of insurance embraced within the coverage of the policy, defendant insured the several persons named in the record of the employees, the amount of insurance on the life of any one employee being fixed in the first instance upon the basis of his earnings during the six months preceding the date of his eligibility for insurance, but with provision made for an increase in the amount of insurance as of January first of each succeeding year to accord with any increased earnings in the previous year. The cost of the insurance was expressly required to be ap-

portioned between the Pullman Company and those of the employees who agreed to come within the coverage of the policy, and included (within minimum and maximum limits) natural death insurance; accidental death insurance, with dismemberment benefit features; and weekly sickness and nonoccupational accident insurance.

The policy provided that the same was based on the payment of successive monthly premiums computed in each instance with reference to the amount of insurance outstanding under the policy on the due date of each premium, and that if any premium was not paid when due, the policy should thereupon become void, save that for every premium except the first a grace period of thirty-one days was allowed during which the policy remained in force.

There was a further clause which provided that the Pullman Company should keep a record of the employees insured under the policy, which record should contain their names, the respective amounts for which they were insured, and the date on which the insurance on each employee became effective; that such record should become a part of the policy, and should be open to inspection by defendant at any time; and that the Pullman Company should report to defendant at the end of each month the number of employees insured at that time and the total amount of insurance then in force, specifying the number of new employees added during such period and the total amount of insurance on their lives, the total amount of increases in insurance during such period, the number of employees whose insurance was terminated during such period, and the total amount of insurance so terminated.

With respect to the termination of individual insurance, that is, the insurance upon the life of any particular employee, the policy provided that irrespective of any other mode of termination, the insurance upon the life of any person insured under the policy should cease and terminate upon the termination of the employment of such person by the Pullman Company, except that, at the option of the Pullman Company, employees temporarily laid off, on leave of absence, or temporarily disabled, should, during such periods, be considered as being in the employ of the Pullman Company.

There was a further provision requiring defendant to issue to the Pullman Company, for delivery to each person insured under the policy, an individual certificate setting forth the insurance protection to which such person was entitled and to whom payable, together with a provision that when the insurance on the life of any person insured under the policy should terminate by reason of the termination of his employment, defendant, upon application of such person, would, within thirty-one days after the date of such termination, and without requiring evidence of insurability, issue upon the life of such person a policy of insurance for the same amount as such person had been insured for under the group policy at the time of the termination of his employment.

Conformably with this requirement of the policy, there was issued and delivered to White a certificate containing the clause with respect to his conversion privilege upon any termination of his insurance under the group policy, and reciting that defendant had insured White for the amount of $2850, which amount it would pay to his designated beneficiary upon the receipt of due proof of his death while the insurance on his life under the group policy was in force.

There was a similar clause in the body of the policy proper, that is, a clause providing that the amount of insurance on the life of any person insured under the policy would be payable by defendant to the designated beneficiary of the employee upon receipt of due proof of the death of the employee while the insurance on his life was in force in accordance with the terms of the policy.

It appears that at the time of the issuance of the group policy to the Pullman Company, the latter prepared and put out a pamphlet or booklet containing a detailed explanation of the insurance coverage which was being put into effect. Defendant's evidence was that each employee of the Pullman Company, including White, had been given a copy of such booklet, the one for White having been handed to him at the time of the delivery of his certificate of insurance. Plaintiff's testimony was that she did not remember anything about the booklet and had no recollection that her husband had received one at the time of the delivery to him of his certificate of insurance; and while she introduced one of such booklets in evidence as a plaintiff's exhibit, it was shown that the copy so introduced was one that the Pullman Company had mailed to her counsel after controversy had arisen between her and defendant over the payment of her claim.

In such booklet it was recited that in the case of a temporary lay-off from work, the natural death insurance would continue for certain stated periods, depending upon the employee's length of service, provided the employee would remit his premiums to the treasurer of his company, or to the receiving cashier in his district, or to the paymaster at the plant at which he was employed; and that if the employee was sick away from work (as was the situation with White), defendant would make weekly payments (of $19 in White's case), beginning with the eighth day of disability and extending up to thirteen weeks.

It was also stated in the booklet that insurance which had lapsed by reason of a lay-off for a period not exceeding one year would be restored if the employee should return to work immediately upon notice sent by his employer; that at the option of the employer, insurance which had lapsed by reason of a lay-off for a period exceeding one year might be restored if the employee should return to work immediately upon notice sent by his employer; that the customary written notice would be sent the employee by mail; and that the failure of the employee to return to work within ten days after such notice had been sent him by the employer would be taken to indicate that

the employee did not desire to continue his employment, and insurance under the plan would immediately lapse.

There was a further provision that in the case of active employees, that is, employees on the payroll of the employer, each employee's portion of the total premium payable for each month or fraction thereof would be deducted from the pay roll for the last half of the preceding month, but that in the case of insured employees off the pay roll, each employee so continuing his insurance in force by payment of his individual premium in full was required to remit his premium on or before the first day of each month to the treasurer of his company, or to the receiving cashier in his district, or to the paymaster at the plant where he was employed.

With respect to the termination of insurance, the booklet stated that the insurance would terminate upon termination of employment with the company or failure to pay premiums when due, and that employment would be considered terminated when the employee left the employment of the company of his own accord, or was discharged for cause, or failed to return to work within ten days after being sent for while absent on lay-off.

For her case plaintiff identified herself as the widow of White, and as his beneficiary under the group policy and individual certificate of insurance, which she introduced in evidence as plaintiff's exhibits along with the booklet containing the details of the plan of group insurance.

She testified on direct examination that the last day her husband had worked for the Pullman Company was January 25, 1936, when he was compelled to quit work because of illness; that he died on January 16, 1937; and that after his death she went to the Pullman Company's shop with reference to her claim, and was told by a Mr. Scott, who was later identified as the company's chief clerk, that there was no insurance money due her.

On cross-examination she testified that "as to the premiums paid by my husband upon the insurance, I know that he paid some while he was sick in 1936." Interrogated with respect to her husband's receipt of disability benefits after he became sick, and particularly with respect to the payment of $19 on May 6, 1936, plaintiff testified that she recalled the payment, but not the letter from the Pullman Company accompanying it, which letter (subsequently introduced in evidence as one of defendant's exhibits) advised White that the check enclosed covered the final payment of weekly indemnity for his illness; that his weekly sickness and nonoccupational accident insurance had lapsed with such payment; and that the monthly premium due from him (in the event he continued the insurance) would be $2.28, beginning with his next payment.

Defendant had three witnesses, all of whom were officials or employees of the Pullman Company.

It was shown by the testimony of these witnesses that the Pullman Company maintains a group insurance bureau at its Chicago headquarters where the records pertaining to the group insurance are kept. In other words, defendant itself keeps no individual records except such as are sent it from time to time by the Pullman Company and which are furnished merely to enable defendant to determine the amount of the aggregate premiums due upon the policy; the pay rolls from which individual premium payments are deducted are made up in Chicago upon the basis of information sent in from St. Louis and other points where the company has employees; and checks to individual employees, at least for disability benefits under the policy, are drawn in the Pullman Company's Chicago office upon insurance company funds set apart for that purpose. Thus it appears that so far as concerns the question of what employees are insured under the policy at any given time, defendant relies entirely upon the Pullman Company's records, those employees being regarded as insured who are shown to be insured upon the Pullman Company's records, and any individual insurance being regarded as lapsed or terminated whenever such records show that the same has either lapsed or terminated.

With respect to White's *status* under the policy, defendant's evidence was that he had been last reinstated on January 16, 1936, nine days before he finally quit active employment; that after he was compelled to leave the active employment of the company because of illness, he became eligible to thirteen weeks of disability benefits of $19 a week; that the last of such payments was the one transmitted to him with the letter of May 6, 1936; that during such period of time, while he still had an income, he himself kept his insurance in force by premium payments in cash at the St. Louis shop where he had been employed; that his insurance lapsed for nonpayment of premium on May 31, 1936; and that inasmuch as no payment was made within the grace period of thirty-one days thereafter, his insurance under the group policy was finally terminated as of that date.

After White was taken off the pay roll on January 25, 1936, the Pullman Company of course paid no further premium for him; and while he was still to be regarded as an employee of the Pullman Company at the time of his death in the sense that if he had lived and returned to active duty he would have been eligible for reinstatement, the conceded fact was that he at no time returned to active duty after January 25, 1936, so as to have been restored to the pay roll of the company.

Defendant argues as a matter of chief insistence that under the law and the evidence it should have had a directed verdict at the close of the entire case. This upon the theory of an absence of proof that White was insured under the policy at the time of his death on January 16, 1937.

It is held that a contract of group insurance is one between the insurer and the employer for the bentfi of the latter's employees, and that the certificate of insurance which is issued to the individual employee is merely a statement to him that he is insured under the group policy. [Gallagher v. Simmons Hardware Co., 214 Mo. App. 111, 258 S. W. 16; Adair v. General American Life Ins. Co. (Mo. App.), 124 S. W. (2d) 657, 660.] It follows, therefore, that the rights of an employee or his beneficiary are to be determined under the provisions of the contract between the insurer and the employer, so that in an action upon a policy of group insurance, the burden is upon the plaintiff beneficiary to show that the deceased employee was insured under such policy at the time his death occurred. [Steffen v. Equitable Life Assur. Soc. (Mo. App.), 64 S. W. (2d) 302; Adair v. General American Life Ins. Co., *supra*.]

In the case at bar, in view of the plan of insurance shown by plaintiff's evidence, together with her own testimony that her husband had left the active service of the Pullman Company on January 25, 1936, it necessarily follows that if White was insured under the policy at the time of his death on January 16, 1937, it was only so because of the fact that after he had ceased to be an active employee, he had himself continued his insurance in force by payment of his individual monthly premiums in accordance with the right extended to insured employees of the Pullman Company who were off the pay roll.

Defendant concedes, of course, that White, after ceasing to be an active employee of the Pullman Company, did keep his insurance in force until May 31, 1936, but it insists that upon his failure to pay the premium of June 1st either on its due date or within the grace period of thirty-one days thereafter, his insurance lapsed as of that date for nonpayment of premium, and was therefore not in force as to him at the time of his death on January 16, 1937. Plaintiff does not pretend that she proved other than that her husband had "paid some while he was sick in 1936," but she asserts that as respects the issue of payment of premiums, the burden was upon defendant to prove nonpayment, and that inasmuch as its evidence of nonpayment was not conclusive as a matter of law, the ultimate question of whether her husband's insurance was still in force at the time of his death was one for the jury to determine.

It is true that in an action by the beneficiary upon an ordinary policy insuring the life of a specifically designated person so that the policy was in force upon that person's life if in force at all, where the beneficiary introduces the policy, makes proof of the insured's death, and shows her own *status* as beneficiary, she makes out a *prima facie* case, and the burden of proving nonpayment of the premiums and lapse of the policy is upon the insurance company which asserts such defense as against her right to recover on the policy. This upon

the theory that with the insured dead, while the insurance company would naturally be in possession of complete information with respect to his payment or nonpayment of the premiums, the same could not be said of his beneficiary, who, not having been a party to the contract, could not ordinarily be expected to have such information at her disposal. It follows, therefore, that once the plaintiff beneficiary in such an action shows the issuance of the policy upon the life of the insured, she is to be aided by a presumption that the policy was continued in force by the payment of premiums by the insured until his death, and if this presumption is to be rebutted, then the company, being in possession of the facts, must assume the burden of overcoming the same by evidence of nonpayment. [Gibson v. Texas Prudential Insurance Co., 229 Mo. App. 867, 86 S. W. (2d) 400.]

But in a case such as the one at bar, where the action is upon a policy of group insurance, the resulting situation is obviously quite different. Here the policy insured no specifically designated person, but instead was so drawn as to cover the vast number of persons whose names might appear upon the "record of employees" from time to time, which record, incidentally, was required to be kept, not by defendant, but by the Pullman Company. Consequently, in such a case, where an action is brought upon the policy, it is the insurance company which must look elsewhere for information with respect to the question of whether the policy was in force upon the life of the particular employee, and the beneficiary, instead of having no available means of information, has at her disposal the records of the employer, whose natural interest in the event of a controversy under such a contract would reasonably be expected to be in favor of its employees and their beneficiaries for whom the insurance had been procured and paid for, and adverse to the insurance company as the opposite party to the contract. [Cooper v. Metropolitan Life Insurance Co. (Mo. App.), 94 S. W. (2d) 1070, 1073.] So it is that in such a case there is no basis for the presumption which arises *ex necessitate* in the ordinary action upon a policy of life insurance, but instead the burden should be upon the plaintiff beneficiary to prove, not only that the deceased employee had at some time become insured under the group policy, but also that the coverage so extended to him had been continued within the provisions of the policy until his death had occurred.

For plaintiff to have borne her burden in the case at bar it would have been necessary for her to have had proof that at her husband's death his name was included in the Pullman Company's "record of employees" insured under the policy. Inasmuch as White was concededly not an active employee on the pay roll at the time, his name could not have been included in such record unless he fell within the classification of an insured employee off the pay roll, by which was meant an employee not engaged in active service for the employer,

but nevertheless electing to keep his insurance in force by the payment of the premiums on his own account during the period of his lay-off. As we have already pointed out, there was evidence to show that White, notwithstanding his lay-off, was still to be regarded as an employee of the Pullman Company within the meaning of the policy in the sense that if he had returned to active service he would have been eligible for immediate reinstatement, but there was no evidence that he had paid his premiums after May 31, 1936, so as to have kept his name in the "record of employees" as an insured employee off the pay roll. Absent such proof, there was no evidence from which the jury could have found that the group policy was in force as to White at the time his death occurred, and with no case made for submission to the jury, the court should have directed a verdict in defendant's favor at the close of the entire case. [Magee v. Equitable Life Assur. Soc., 62 N. D. 614, 244 N. W. 518; Austin v. Metropolitan Life Insurance Co. (La. App.), 142 So. 337; Curd v. Travelers Insurance Co., 51 Ga. App. 306, 180 S. E. 249; Thull v. Equitable Life Assur. Soc., 40 Ohio App. 486, 178 N. E. 850.]

It follows that the judgment rendered by the circuit court should be reversed, and the commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court is, accordingly, reversed. *Hostetter, P. J.*, and *Becker* and *McCullen, JJ.*, concur.

### On Motion for Rehearing and to Modify.

Respondent (plaintiff) has filed a motion for rehearing in which she urges, among other things, that in holding that she made no case for the jury in her action upon the policy in question we have failed to give effect to section 2958, Revised Statutes Missouri, 1929 (Mo. Stat. Ann., sec. 2958, p. 1824), which provides that all instruments in writing made or signed by any person or his agent, whereby he shall promise to pay to any other person any sum of money therein mentioned, shall import a consideration, and be due and payable as therein specified.

We appreciate that this statute applies to policies of insurance so as to be authority for placing the burden of proving nonpayment of premiums upon the insurer in a case where the defense is made that the policy sued on had lapsed for nonpayment of premium. [Smith v. Ohio Millers' Mutual Fire Insurance Co., 339 Mo. 236, 49 S. W. (2d) 42.] In other words, where the execution and delivery of a policy of insurance is admitted, the same, under the statute, imports a consideration, and if in fact there was no consideration for the policy,

then the burden of establishing such defense is upon the insurer who asserts it.

In this case, however, there was no issue of lack of consideration for the group policy sued on, but instead the question to be determined, as we pointed out in the principal opinion, was whether White was insured under the policy at the time of his death on January 16, 1937. Had defendant interposed the defense that the group policy had lapsed for nonpayment of premiums, it would unquestionably have had the burden of proof upon that issue, but with the effectiveness of the group policy admitted, there was no question of its consideration to be determined, and we consequently do no violence to the statute in holding that the burden was upon plaintiff to prove that her husband had died within its coverage, even though, in view of the nature of the particular case, the establishment of that fact depended upon proof that after White had ceased to be an active employee on the pay roll of the Pullman Company, he had thereafter kept his individual insurance in force by the payment of the premiums on his own account during the period of his lay-off.

But plaintiff points out that defendant in any event undertook by its answer to assume the burden of proving affirmatively that the insurance on White's life had terminated on May 31, 1936, for nonpayment of premium, and she asks that we modify our opinion by setting out so much of the pleadings as would show such fact.

Defendant did so plead in its answer, and our mere statement of the fact suffices for plaintiff's purposes without burdening the opinion with extensive quotations from any one or more of the pleadings.

We think, however, that even though defendant did purport to plead its defense affirmatively, such action on its part did not have the legal effect of actually converting the defense into an affirmative one so as to have cast upon defendant the burden of proof upon the issue of whether White was included within the coverage of the policy after May 31, 1936. That issue was an essential part of plaintiff's cause of action, and defendant's purported affirmative defense in reality constituted no more than the allegation of specific facts which, if true, defeated plaintiff's cause of action so as to have been admissible under a general denial.

The burden is always on the plaintiff in any action to prove the facts that will warrant a recovery. [Turner v. National Benevolent Society, 224 Mo. App. 463, 28 S. W. (2d) 125.] Before plaintiff was entitled to recover in this action, it was incumbent upon her to prove that at her husband's death he was still within the coverage of the policy, and she was not to be relieved of that burden by reason of the fact that defendant had unnecessarily assumed to plead its defense affirmatively, notwithstanding the fact that such defense was in truth

one which was entirely founded upon facts necessary to support plaintiff's cause of action.

The commissioner accordingly recommends that respondent's motions for rehearing and to modify be overruled.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. Respondent's motions for rehearing and to modify are, accordingly, overruled. *Hostetter, P. J.,* and *Becker* and *McCullen, JJ.,* concur.