248 S.W.2d 585 (1952)
MUTUAL BANK & TRUST CO. et al.
v.
SHAFFNER et al.
No. 42739.
Supreme Court of Missouri, Division No. 1.
April 14, 1952.
Rehearing Denied May 12, 1952.
*586 Jones, Hocker, Gladney & Grand, James C. Jones, Jr., Lon Hocker and Vincent L. Boisaubin, all of St. Louis, for appellants.
J. E. Taylor, Atty. Gen., George W. Crowley and Julian L. O'Malley, Asst. Attys. Gen., for respondents.
*587 LOZIER, Commissioner.
Plaintiff-appellant bank and trust company (herein called the bank) and plaintiff-appellant insurance company (herein called the insurer), both Missouri corporations, filed a declaratory judgment action against defendant-respondent State Finance Commissioner (herein called the Commissioner) and the State Superintendent of Insurance (herein called the Superintendent). Defendants answered. The case was submitted on the pleadings. The trial court found for defendants. Plaintiffs appealed.
As both defendants are "state officers," the appeal is properly here. Art. V, Sec. 3, 1945 Const., 2 V.A.M.S., p. 31. See In re Wellston Trust Co., Mo.Sup., 131 S.W.2d 720; Klaber v. O'Malley, Mo.Sup., 90 S.W. 2d 396.
The cause involves the validity of a proposed arrangement (herein called the plan) whereby the insurer is to insure under a group policy, for specified lengths of time and under certain conditions, the lives of the bank's depositors making deposits of a certain type. The petition outlined the plan. Defendants' answer challenged its legality. The trial court held that the plan: Was not within the bank's express powers and was "not necessary or rightly incident to the exercise of" its express powers, and involved employment of its moneys in trade or commerce in violation of Secs. 362.200 and 363.270. (This and all subsequent statutory references are to both RSMo 1949 and V.A.M.S. unless otherwise indicated.) Plaintiffs were enjoined from putting the plan into effect.
Essentially, the plan consists of three contracts. The first is one between the bank and the insurer. Its terms are contained in a "Group Savings Certificate Policy." The insurer agrees that: subject to the terms of "this policy and the representations made in each application made to [the bank] for the purchase of an Insured Life Savings Certificate which shall be accepted by the bank, to pay immediately upon receipt of due proof of the death of the Purchaser [depositor] prior to the completion of all of his monthly deposits, an amount of insurance equal to the difference between the maturity value of the Certificate, exclusive of interest, and the amount deposited by the Purchaser up to the date of his death. The amount of insurance effective on the life of a Purchaser [not exceeding $2,000, is] an amount equal to the difference between the maturity value of the Certificate, exclusive of interest, and the amount deposited in the Insured Life Savings Account at the time of the Purchaser's death. In the event of the death of the depositor before interest at the rate of % per year upon the deposits to such account shall equal or exceed the cost of insurance upon the life of such depositor, the amount of insurance shall be increased by such difference." The insurance commences when the bank issues its Certificate and continues "month to month as long as the bank pays the premium for the insurance on the lives of the Purchasers insured under this policy. Insurance hereunder extends to those individuals who have purchased from the bank Insured Life Savings Certificates while in good health and who have kept their Certificates in force by making the required deposits and who have not withdrawn any funds from said account before its maturity." The policy does not cover Purchasers who, at the time of purchase, are under 1 or over 50 years of age. The bank agrees not to knowingly issue a Certificate to any applicant in ill health, "and any such insurance shall be void."
The bank is to furnish the insurer monthly reports of the total of the maturity values of all Certificates in force, less the total amounts of the accounts covered by such Certificates. The basic monthly premium rate, 83.3¢ per $1,000 of insurance is adjustable downward annually according to mortality savings actually achieved; methods of computing the adjusted rates are set out. The policy is renewable annually by continuance of premium payments. Either the bank or the insurer may, upon 30 days notice, discontinue insurance under the policy as to subsequent Purchasers.
The second contract is one between the bank and the depositor. Its terms are set out in the depositor's Application and the bank's Certificate. The depositor may purchase *588 for himself and as "trustee" for a named "beneficiary" or for himself and a named co-owner. He "makes application to purchase" an "Insured Life Savings Account" of a "Certificate maturity value" of $_____, "plus accrued interest, which shall be purchased by" a specified number of consecutive monthly installments in stated amounts. The form includes: "I hereby certify and represent that I am in good health and that I have not had medical or surgical treatment in the last two years for cancer, tuberculosis, circulatory or heart condition, kidney trouble, nervous disorder, except as follows:_____. I request the bank to include me as an insured on my life in an amount equal to the difference between the maturity value of the Certificate hereby applied for, exclusive of interest, and the aggregate amount of the deposit during each month that said Certificate remains in force," but not exceeding $2,000 under all of the depositor's Insured Life Savings Accounts. There is a waiver of nondisclosure of physician-patient communications.
The bank then issues the "Certificate For Insured Life Savings Account," certifying that the depositor "has purchased" the Certificate with a fixed maturity value, "plus interest on the deposits made by the Purchaser." The Certificate matures upon the making of the final deposit "or upon receipt of due proof of the death of the Purchaser, whichever first occurs." Receipt of the initial monthly deposit is acknowledged. Monthly deposits are due on the first of the month. "This Certificate shall be void if any monthly deposit is not made within 30 days of the due date thereof, or in the event of any withdrawal from the Insured Life Savings Account. In such event, this account shall be converted into an ordinary savings account, less a service charge equal to 1% of the maturity value of this Certificate. The bank may require, at its option, 60 days notice in writing of intention to make any withdrawal." Upon maturity, the Certificate's value is the total amount of the deposits, plus any life insurance necessary to complete its maturity value. This maturity value is payable "to the Purchaser, if living, by transferring these funds into a regular savings account in the name of the abovenamed Purchaser and beneficiary or joint owner, or if Purchaser is dead, in the name of the above-named beneficiary or joint owner.
"The undersigned bank has secured from the [insurer] a policy of life insurance which insures the life of the above-named Purchaser in an amount equal to the difference between the maturity value of this Certificate, exclusive of interest, and the aggregate amount of the deposit during each month this Certificate remains in force. This insurance is issued in consideration of the statements and representations of the Purchaser in his written application for the Insured Life Savings Certificate. In the event of a material misrepresentation therein, the insurance feature of this Certificate shall be void.
"Maximum insurance on the life of any Purchaser under all Life Savings Accounts issued by the [insurer] shall not exceed $2,000. If the maturity value of all such accounts calls for more aggregate insurance than $2,000, the maturity value of the later accounts at death shall be reduced to the amount of deposits, interest and insurance remaining available within the maximum aggregate of $2,000.
"In case the [insurer] should disclaim any liability for the insurance on the life of the above-named Purchaser or should become insolvent, the liability of the bank hereunder is limited to the deposits, plus interest, less the service charge, and the bank will assign to the beneficiary or joint owner of the account its claim against the [insurer]."
The Policy, the Application and the Certificate constitute the third contractthat between the depositor and the insurer. Adair v. General American Life Ins. Co., Mo.App., 124 S.W.2d 657, 659.
Has the bank power to effectuate the plan ? Both parties cite and rely upon: Sec. 5, Art. XI, 1945 Const., 2 V.A.M.S., p. 538, prohibiting a corporation from engaging in business "other than that expressly authorized in its charter or by law" ; and Sec. 362.105, authorizing banks "to *589 conduct the business of receiving money on deposit", with or without interest. Plaintiffs insist and defendants deny that authorization for the plan is implied in this expressly granted power.
The parties agree that "the settled rule is that a corporation possesses only such powers as are expressed or fairly implied in the statute by or under which it is created". Hanlon Millinery Co. v. Mississippi Valley Trust Co., 251 Mo. 553, 158 S.W. 359, 363. They also agree that implied powers "are defined to be those possessed by a corporation, not indispensably necessary to carry into effect others expressly granted, and comprise all that are appropriate, convenient, and suitable for that purpose, including as an incidental right a reasonable choice of the means to be employed in putting into practical effect this class of powers." State ex inf. Harvey v. Missouri Athletic Club, 261 Mo. 576, 170 S.W. 904, 909, L.R.A.1915C, 876. See also: 9 C.J.S., Banks and Banking, § 160, page 343; Fletcher, Cyclopedia Corporations, Perm. Ed., Vol. 6, Sec. 2538, p. 384; Malone v. Republic National Bank, Tex. Civ.App., 70 S.W.2d 809.
In his Application, the depositor requests that his funds be placed in a special kind of savings account. He agrees that, in the event of withdrawal or default in making monthly deposits, the balance (less the service charge) shall be transferred to an ordinary or a regular savings account. These deposits are undoubtedly either "demand deposits" or "time deposits." Secs. 362.010 and 363.010. Reserves must be kept against them. Secs. 362.210, 362.215, 363.290 and 363.300. Under the plan, these special deposits remain bank deposits.
Defendants say that "banks frequently distribute gratuitously pencils, pocket diaries, calendars and numerous other small articles of utility as an act of advertising." But this plan is more than advertising. As defendants concede, it "is a unique method of building up deposits in a bank" and "the primary purpose of the alleged insurance coverage is to guarantee to the bank a constant flow of deposits." The plan is not to be condemned merely because it is novel and unique. "Is there anything whereof it may be said, See, this is new? it hath been already of old time, which was before us." The plan is based upon principles consonant with long established banking methods and recognized insurance practices. It is not inherently wrong. It neither violates the law nor contravenes public policy. It appears to be an appropriate, business-like means of the exercise of the bank's powers relating to deposits.
Defendants say that the bank's use of funds in payment of premiums is "the promotion of the insurer's insurance business" and the "barter of life insurance coverage for periodic payments of money which is to be used in the bank's interest." Payment of premiums under this group life insurance policy is obviously not the use of funds, "directly or indirectly, in trade or commerce, by buying and selling ordinary goods, chattels, wares and merchandise". Secs. 362.200 and 363.270. (Cases cited by both parties are not in point as they involve, and sustain, a bank's right to finance a customer's purchase or sale of "ordinary" tangible personal property.) We hold that the plan is within the bank's implied powers and does not violate said sections.
Nor is the contract between the bank and the depositor "unilateral" and unenforceable. We agree with defendants that the applicable principle is that stated in Laclede Construction Co. v. Tudor Iron Works, 169 Mo. 137, 69 S.W. 384, and State ex rel. St. Louis Car Co. v. Hughes, 348 Mo. 125, 152 S.W.2d 193, viz.: mutuality of obligation is essential. Such mutuality exists here. The depositor's Application is an offer. The Certificate is an acceptance. The two constitute the contract. The bank's promises are consideration to the depositor. The bank assumes several very definite enforceable obligations. The most important is that of bringing the depositor under the group life insurance policy; or enabling the depositor to acquire life insurance, for a fixed period of time in an amount readily ascertainable at any time within such period, so long as he continues *590 his monthly deposits. And this without cost to him so long as he keeps the contract in force. If, as is his right, he elects to abandon the contract, he does so upon conditions to which he has expressly agreed. But only his abandonment can relieve the bank of its legal obligation to pay the premiums on his life insurance.
Defendants cite and quote from cases involving the rule that a promise of performance at the wish, will or pleasure of the promisee is unenforceable. Performance of the instant bank's obligations under its contract with the depositor is not so conditioned.
But, defendants suggest, the depositor is not bound because he makes no promise that he will make all of the monthly deposits stated in his Application. But the depositor does agree to make all such deposits, subject to his reserved right to abandon the contract. In such case, he has agreed, the contract shall become inoperative, the insurance cancelled, the deposit converted into an ordinary or regular savings account and the bank reimbursed its costs for premiums and of administration of the special account, including its insurance feature.
Defendants say that "in case of default, the depositor suffers a penalty of 1% of the Certificate's maturity value"; that the Certificate form implies that the bank will pay interest on the deposit but that no rate is fixed; and that "it is impossible to figure any definite amount the depositor will get over and above his deposits." As we do not deem this material, we shall assume without deciding that the bank is not obligated to pay any interest whatever. The 1% service charge is not a "penalty" for withdrawal of or failure to complete the deposits. It is the liquidated amount, the parties expressly agree, that the bank shall be reimbursed for its administration and premium costs if the depositor abandons the contract.
Next, defendants say that the plan "creates no valid trust which may be executed by a bank having trust powers, since there is no definite fixed property or object to which a trust may attach." While we believe that the amount of insurance in effect at any given time is definite (in that it is readily ascertainable), we need not rule this contention. The plan involves no express trust.
Defendants next assert that the Certificate "is not an enforceable contract of life insurance, and wholly fails to bind the bank in any amount over and above its deposit liability, plus interest, less a service charge." Of course, the Certificate itself is not an insurance contract. The bank is neither an insurer nor a reinsurer. It only agrees to pay the premiums on the depositor's insurancenot to guarantee the insurer's performance of its contract with the depositor.
Defendants criticize the provision relating to the bank's obligation to assign its claim against the insurer in the event the insurer disclaims liability or becomes insolvent. We find nothing wrong in this. This provision places both the insurer and the assured in exactly the same position as if an individual policy had been issued directly to the depositor-assured.
Defendants next argue that the policy "is not an insurance contract between the insurance company and the depositor, as an individual, and any attempt to bind the depositor by the terms of such group policy would be of no avail since there is no privity of contract between the insurance company and the depositor." Of course, the "Policy" itself is not an insurance contract. But it is a part of such contract, and the depositor-assured is bound by its provisions. The other parts of that contract are the insurance provisions of the Application and the Certificate. Adair v. General American Life Ins. Co., supra.
And there is privity of contract between the insurer and the depositor-assured. The depositor, eligible for coverage under the specific group policy, makes specific application for specific life insurance under that specific policy. The bank accepts that application and, in behalf of the insurer (which has specifically agreed to insure such a depositor-applicant) brings the depositor within the policy's coverage. Thus, the bank, as the insurer's agent, actually *591 accepts the application and puts into effect the specific life insurance for which the depositor has specifically applied, and makes him and his named beneficiary the specific assured and beneficiary he has requested that each, respectively, be made.
We do not believe that privity between the insurer and the assured is necessary in such a group life insurance contract as is involved in the instant plan. A group policy is a contract between an insurer and an individual or a corporation for the benefit of third persons. "Basicly, it resembles or is a simple third party beneficiary contract. It is true that every life insurance policy is such a contract, but under the group policy the beneficiary is also the insured." Crawford and Harlan, Group Insurance, Sec. 15, p. 30. The assured's rights are determined by the policy, and either he or his beneficiary may maintain an action against the insurer upon the policy. See Gallagher v. Simmons Hardware Co., 214 Mo.App. 111, 258 S.W. 16; White v. Prudential Ins. Co. of America, 235 Mo.App. 156, 127 S.W.2d 98; Adair v. General American Life Ins. Co., supra.
We note that the insurer has not raised the issue of the bank's insurable interest. See Baker v. Keet-Rountree Dry Goods Co., 318 Mo. 969, 2 S.W.2d 733, 738, 3 S.W.2d 1003. Defendants concede that in "employees' group insurance, the employment factor has been held to give rise to insurable interest necessary to the validity of such group contracts." However, they point out, there is no employment factor in this case, and the depositor is not the bank's debtor. They inquire: "If the bank has an insurable interest in its depositors' lives, how is it measured? If the bank lacks an insurable interest in the life of the depositor as a creditor, officer or employee, is not the contract a wagering contract?"
An insurable interest is not required of the bank. The group insurance contract is one between the insurer and the bank for the benefit of certain depositors. When a depositor becomes insured thereunder, his rights, and the rights of the beneficiary whom he has designated, are measured and determined by the group policy. Gallagher v. Simmons Hardware Co., White v. Prudential Ins. Co. of America, and Adair v. General American Life Ins. Co., supra. The insurance proceeds payable upon the death of the insured depositor inure to the benefit of such beneficiary. At most, the bank is a mere conduit through whom the insurance proceeds are paid to the named beneficiary. Unquestionably, every person has an insurable interest in his own life and "he may insure it for the benefit of any person whom he sees fit to name as beneficiary." Walker v. General American Life Ins. Co., Mo.Sup., 141 S.W.2d 785, 787. Thus, the insurable interest which the insured depositor has in his own life makes unnecessary the existence of any insurable interest in the bank.
Finally, defendants assert that no Missouri statute expressly authorizes a Missouri insurer to issue a policy upon the lives of more than one individual. True. But no statute prohibits the issuance of a group policy. Sec. 376.010 (formation of companies for issuance of life, health and accident insurance) does not. And the legislature has expressly recognized group policies. See Secs. 376.340, 376.360, subsec. 5, 376.390, and 376.670, subsec. 12.
We hold that the plan is legal and valid; that the bank and the insurer, respectively, are authorized by law to put it into effect; and that the group life insurance policy, proposed to be issued under and in pursuance of the plan, is a legal and valid policy under the law and statutes of Missouri.
The judgment is reversed and the cause is remanded with directions to enter a declaratory judgment in accordance herewith.
VAN OSDOL and COIL, CC., concur.
PER CURIAM.
The foregoing opinion by LOZIER, C., is adopted as the opinion of the court.
All concur.