**Evelyn BELLAMY, Respondent,**

v.

**PACIFIC MUTUAL LIFE INSURANCE COMPANY, Appellant.**

No. 63428.

Supreme Court of Missouri,
En Banc.

May 31, 1983.

Robert W. McKinley, Jr., Kansas City, for appellant.

Thomas A. Sweeney, Kansas City, for respondent.

RENDLEN, Chief Justice.

Plaintiff (beneficiary) sued for benefits under a group life and accident policy following the death of her daughter, Nancy Bellamy, in an automobile accident. After a verdict for plaintiff of $105,000 plus interest, insurer sought review in the Missouri Court of Appeals, Western District, where the judgment was affirmed. Transfer was granted to this Court and the cause, coming to the writer on reassignment, is decided as though on original appeal. We affirm.

Defendant raised multiple assignments of trial error, including failure to grant its motion for a directed verdict and several instructional errors.[1] Denying defendant's

---

1. Defendant contends (1) the court erred in overruling its motion for a directed verdict at the close of all the evidence because the evidence supported none of plaintiff's pleaded the- ories of recovery, (2) the burden of proof instruction was erroneous in that it should not have permitted a finding of waiver or estoppel except upon clear and satisfactory evidence, (3)

contentions, plaintiff asserts the trial court erred in failing to sustain her motion for a directed verdict. Concluding that plaintiff was entitled to a directed verdict, we deny defendant's claim to a directed verdict and accordingly need not reach the alleged instructional errors.

At the time of her death and for some period prior thereto, Nancy Bellamy was a student and part-time employee of Frick's TV, Inc., a television repair business owned and operated by Mr. and Mrs. Timothy Frick. Until early 1975, the Fricks were covered under a group insurance policy issued by Prudential Insurance Company to a partnership of which Timothy Frick was the only remaining member. When Prudential announced a premium increase, the Fricks decided the rate was more than they cared to afford and asked their Prudential agent, John Russo, if he knew of anything less expensive. Russo spoke to his friend, Frank Agrusa, another Prudential agent who was also a broker. Agrusa supplied Russo with a sales kit describing a group insurance plan for small employers offered by Beneficial Employees Security Trust (B.E.S.T.) and underwritten by Pacific Mutual Insurance Company. Russo met with the Fricks, discussed the advertising brochures and explained the plan required participation of at least three employees. The Fricks told Russo their group would consist of Mr. and Mrs. Frick and Nancy Bellamy. Russo testified Mrs. Frick told him Nancy was a full-time employee, a statement Mrs. Frick denied. Russo filled out printed application forms for Nancy and the Fricks, writing in "$320" as Nancy's monthly wage, although she normally worked only eight hours a week for a wage of $2.20–2.25 per hour. Russo testified, and Mrs. Frick denied, that the information as to Nancy's salary was provided by the Fricks. In any event, immediately above the place for signature on the application form left for Nancy to sign appeared the following printed statement:

I certify that I am engaged in regular full-time employment for at least 30 hours per week. I authorize my employer to make deductions from my earnings necessary to provide my contribution for this coverage. I understand that coverage is not in force until the effective date shown on each certificate of insurance issued to me; however, if I am absent from full-time employment on such date(s) as the result of an accident or sickness I agree that coverage(s) is not effective.

Mrs. Frick testified that before leaving the form for Nancy to sign, she called Russo and asked him about the 30-hour provision. According to Mrs. Frick, Russo assured her the 30-hour requirement applied to employees hired after the program was initiated, not employees already working for the Fricks, but there was no evidence Nancy ever met Russo or discussed eligibility requirements with the Fricks. Ordinarily, Mrs. Frick did not see Nancy, who worked on Saturdays and during Mrs. Frick's vacations, so Mrs. Frick left the application for Nancy to sign with a note explaining what it was. After Nancy completed and signed the form, naming her mother as beneficiary, it was delivered to Russo and forwarded, along with the Fricks' application forms and proper payment, to B.E.S.T. Soon thereafter, a Pacific Mutual certificate of insurance validated by B.E.S.T. was issued and delivered to Nancy, showing that coverage was effective April 1, 1975. Nancy's stated basic life coverage was $5,000, with an additional $100,000 coverage in the event of travel accident. Monthly premiums for Nancy's coverage were paid by the Fricks until June 13, 1975, when Nancy was killed in an automobile accident. A claim was made by Nancy's mother as beneficiary, but Pacific Mutual declined payment on the ground that as a part-time employee, Nancy had no coverage. Defendant's denial of coverage precipitated this suit.

other instructions were erroneous in that there was no competent, probative evidence of agency to support a finding of waiver or estoppel and (4) the court erred in submitting plaintiff's

verdict directing instruction because the instruction did not require the jury to find that Nancy Bellamy was eligible for coverage or the essential elements of waiver and estoppel.

At the close of the evidence, both parties moved for a directed verdict and the motions were denied. On appeal, defendant contends the trial court erred in overruling its motion for a directed verdict, because Nancy failed to satisfy two conditions precedent plainly specified in the policy: full-time employment and contribution by the employee to the cost of the insurance.[2] Plaintiff counters that the court erred in overruling her motion for a directed verdict, because the employment condition in Nancy's contract was ambiguous and the premiums paid by Nancy's employer were a substitute for salary which satisfied the contribution condition of the policy.[3] To resolve this controversy, we must first identify the parties to the contract.

In numerous Missouri cases, the statement is found that a contract of group insurance is one between the insurer and employer for the benefit of the latter's employees, *e.g.*, *Burckhardt v. General American Life Insurance Co.*, 534 S.W.2d 57, 64 (Mo.App.St.L.1975); *Straub v. Crown Life Insurance Co.*, 496 S.W.2d 42, 43 (Mo.App. St.L.1973); *Satz v. Prudential Insurance Co. of America*, 225 S.W.2d 480, 482 (Mo. App.St.L.1949); *Nick v. Travelers Insurance Co.*, 185 S.W.2d 326, 335–36 (Mo.App. K.C.1945), aff'd 189 S.W.2d 532 (Mo.1945); *Crawford v. Metropolitan Life Insurance Co.*, 167 S.W.2d 915, 924 (Mo.App.St.L. 1943); *Longley v. Prudential Insurance Co. of America*, 161 S.W.2d 27, 29 (Mo.App.St.L. 1942); *Brown v. Equitable Life Assurance Society of United States*, 143 S.W.2d 343, 346 (Mo.App.St.L.1940); *Williams v. Sun Life Assurance Co. of Canada*, 235 Mo.App. 741, 148 S.W.2d 112, 114 (Mo.App.K.C.1940); *White v. Prudential Insurance Co. of America*, 235 Mo.App. 156, 127 S.W.2d 98, 102 (Mo.App.St.L.1939); *Eisen v. John Hancock Mutual Life Insurance Co.*, 230 Mo.App. 312, 91 S.W.2d 81, 87 (Mo.App.K.C.1936); *Kingsland v. Missouri State Life Insurance Co.*, 228 Mo.App. 198, 66 S.W.2d 959, 961 (Mo.App.K.C.1933). It may be inferred from these cases that as to policies of group insurance, no privity of contract exists between employee-insured and the insurer, and rights of the employee and his beneficiary are exclusively determined by the contract between insurer and employer.

There are suggestions in other cases, however, that employee-participants in group insurance plans have more than indirect rights conferred by the master policy. In *Kingsland v. Missouri State Life Insurance Co.*, 228 Mo.App. 198, 66 S.W.2d 959, 961 (Mo.App.K.C.1933), the Court of Appeals, Kansas City District, indicated conditions in a certificate of group insurance issued to an employee might alter those in the master policy or that the certificate alone might constitute a contract of insurance. In *Adair v. General American Life Insurance Co.*, 124 S.W.2d 657, 660 (Mo.App. K.C.1939), the same court indicated a beneficiary might recover in case of a real conflict between the employee's certificate of insurance and the master policy. In *Butler v. Equitable Life Assurance Society of the United States*, 233 Mo.App. 94, 93 S.W.2d 1019, 1023–25 (Mo.App.K.C.1936), *Hays v. Equitable Life Assurance Society of the United States*, 235 Mo.App. 1261, 150 S.W.2d 1113, 1115 (Mo.App.K.C.1941), and *Nick v. Travelers Insurance Co.*, 238 Mo. App. 1181, 185 S.W.2d 326, 338–9 (Mo.App. K.C.1945), aff'd 354 Mo. 376, 189 S.W.2d 532 (Mo.1945), it was found that the relationship between insurer and contributing employee-participants in group insurance plans was sufficient to require notice of cancellation not specified in the master policy. On

---

**2.** Defendant did not raise the defense of misrepresentation, possibly because § 376.580 RSMo 1978, provides that no misrepresentation made in obtaining or securing a policy of insurance on the life or lives of any person or persons, citizens of this State, shall be deemed material or render the policy void, unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable. A similar provision, § 376.800 RSMo 1978, applies to accident and sickness insurance.

**3.** A respondent may attack erroneous rulings of the trial court for the purpose of sustaining a judgment in respondent's favor. *Kennedy v. Dixon*, 439 S.W.2d 173, 179–80 (Mo. banc 1969); *Senter v. Ferguson*, 486 S.W.2d 644, 648 (Mo.App.1972).

its way to affirming judgment for a group insurer in *Carter v. General American Life Insurance Co.,* 452 S.W.2d 253, 256–57 (Mo. App.St.L.1970), the Court of Appeals, St. Louis District, felt obliged to determine there was no ambiguity in *either* the master policy or the employee's certificate of insurance. In *Crawford v. Mid-America Insurance Co.,* 488 S.W.2d 255, 258–59 (Mo.App. K.C.1972), the Court of Appeals, Kansas City District, held a "Special Notice to Parents" summarizing master policy provisions constituted part of a student group insurance policy. In *Morris v. Travelers Insurance Co.,* 546 S.W.2d 477, 482–86 (Mo.App. K.C.1976), the Kansas City Court of Appeals held a direct contractual relationship exists between employee and group insurer. Similarly that court in *Cannon v. Katz Drug Co.,* 577 S.W.2d 82, 87 (Mo.App.K.C. 1978), said that an employee-participant in a contributory group life policy was not simply a third party donee beneficiary but a party to the insurance contract who was entitled to notice as a condition of cancellation. Finally, in *Mutual Bank and Trust Co. v. Shaffner,* 248 S.W.2d 585, 588, 590–91 (Mo.1952), this Court found that under a group life insurance policy arranged by a bank for certain depositors, privity of contract existed between the insurer and the depositors-assured.

■ A review of these cases and of the record persuades us the conclusion reached in the latter class of cases is in closest accord with the commercial realities of the group insurance contract effected in this case.

The master policy was issued by Pacific Mutual Insurance Company to the Beneficial Employees Security Trust (B.E.S.T.), an entity created to market group insurance to small employers. Under the contract with B.E.S.T., Pacific Mutual agreed to pay claims of eligible participants for which it received 80–85% of gross premiums paid. For the remaining 15–20%, B.E.S.T. directed the promotion, marketing and administration of the plan. In 1975, B.E.S.T. had no employees in Missouri but marketed the plan by mail. Fliers were mass mailed to life insurance salesmen soliciting their interest in sales kits. Responders were supplied with kits, which included brochures describing the benefits and costs of the plan, agents' instructions and application forms. Agents were encouraged to stock the kits and distribute them to other agents; the only requirement was that each salesman be a licensed insurance agent. Neither Pacific Mutual nor B.E.S.T. had any objection if two or more licensed agents worked together on a single sale. Pacific Mutual did not supervise the selection of agents by B.E.S.T. but relied on the license requirement and the brochures and advertising material, all approved by it, to avert miscommunication about the policy's provisions. Under the B.E.S.T. marketing scheme, employers were solicited by salesmen on the basis of an advertising brochure which included an application for trust membership. Individual application forms were provided to prospective employee-participants, after completion of which the employer's application for trust membership, employee application forms, the employer's trust enrollment fee and employees' premium payments were forwarded by the soliciting agent to B.E.S.T. If the applications were approved, Pacific Mutual certificates of insurance containing the effective date of coverage and a description of the policy provisions were validated by B.E.S.T. and provided to participant-employees. The 54 page master policy was kept by the B.E.S.T. trustee in California and not disseminated to employers or employee-participants.

From these facts, it appears the entire object of B.E.S.T. was to solicit the purchase of Pacific Mutual insurance by employees of small employers, a theretofore relatively untapped source of group insurance business. Though employer participation was required to reduce administrative costs, the major goal of the B.E.S.T. plan was enrollment of employee-participants. The amount realized by Pacific Mutual and B.E.S.T. was most directly dependent on the number of employees enrolled and the trust, corporations directed by the trust, insurance salesmen and employers were but agents and subagents of Pacific Mutual for

obtaining insurance contract purchases by employees. Such being our view, we find there existed a contract of insurance between Nancy Bellamy and Pacific Mutual Insurance Company. We now consider the terms of the contract.

On appeal, neither party disputes that the master policy constituted at least part of the contract between Nancy and Pacific Mutual, and it will therefore be so considered. It is also reasonable to presume a participant's initial or continued premium payments are made in consideration of promises communicated by the insurer before occurrence of the contingency on which the claim rests. At least in the absence of evidence to the contrary, therefore, we will consider statements authorized by Pacific Mutual and communicated to Nancy before her death as part of the insurance contract. Thus the contract here to be construed consists of the master policy, Nancy's application form and the Pacific Mutual certificate of insurance issued to her. The statement in the certificate that the master "[p]olicy . . . alone constitutes the contract under which payments are made" will not here be enforced.

Pacific Mutual first relies on provisions in the master policy stating, "a participant who is not actively at work on a full-time basis on his Initial Eligibility Date shall not be eligible for coverage under this policy until the date he thereafter is actively at work on a full-time basis," and defining "[a]ctively at work on a full-time basis" as "30 hours per week, 5 months per year." Defendant also points to provisions in the certificate of insurance stating, "[y]ou must be actively at work on a full-time basis on the date your coverage would commence, or it will be deferred until the first day thereafter when you are actively at work on a full-time basis," and defining "[a]ctively at work on a full-time basis" as "you are performing your usual duties at your customary place of employment for not less than 30 hours per week nor less than five months per year." Pacific Mutual argues that because these provisions are clear and unambiguous and the evidence is undisputed Nancy did not work as many as 30 hours

per week, she is therefore not entitled to coverage.

To the contrary plaintiff cites other provisions in the contract documents as creating ambiguity on the question of Nancy's eligibility. On the application form signed by Nancy appears the statement, "I understand that coverage is not in force until the effective date shown on each certificate of insurance issued to me." Typed on the validation sticker attached to page one of the certificate of insurance is an "Effective Date" of "4/1/75." On page three of the certificate, appears the statement:

WHO ARE ELIGIBLE PARTICIPANTS? All employees of a Subscribing Employer are eligible participants.

. . . . .

WHEN DOES COVERAGE COMMENCE? . . .

. . . . .

The date your coverage commences is the Certificate Effective Date shown on the attached Certificate Validation Sticker. You must be actively at work on a full-time basis on the date your coverage would commence, or it will be deferred until the first day thereafter when you are actively at work on a full-time basis.

Finally, printed on the application form after the statement, "I understand that coverage is not in force until the effective date shown on each certificate of insurance;" was the clause "however, if I am absent from full-time employment on such date(s) *as the result of an accident or sickness* I agree that coverage(s) is not effective." (Emphasis added.)

 If the language in an insurance contract is clear and unambiguous, this Court must construe the contract as written, *Madison Block Pharmacy, Inc. v. United States Fidelity and Guaranty Co.,* 620 S.W.2d 343, 346 (Mo. banc 1981), but an insurance contract reasonably susceptible of any interpretation favorable to the insured will be so construed, *Meyer Jewelry Co. v. General Insurance Co. of America,* 422 S.W.2d 617, 623 (Mo.1968), in order to avoid

a forfeiture. *Eyring v. Kansas City Life Insurance Co.,* 234 Mo.App. 328, 129 S.W.2d 1086, 1088 (Mo.App.1939). Though it is the duty of the court to reconcile conflicting clauses in a policy so far as their language reasonably permits, *Heald v. Aetna Life Insurance Co.,* 340 Mo. 1143, 104 S.W.2d 379, 383 (Mo.1937), when reconciliation fails, inconsistent provisions will be construed most favorably to the insured. *Drucker v. Western Indemnity Co.,* 204 Mo.App. 516, 223 S.W. 989, 992 (Mo.App.1920). In our view, the unqualified certificate statement "[a]ll employees of a Subscribing Employer are eligible participants" is irreconcilably inconsistent with a provision completely banning part-time employees from eligibility and restricting coverage to full-time employees. Resolving this inconsistency in favor of the insured, reading all of the contract provisions together, and attempting to ascribe some meaning to each contract term, we are of the opinion the contract may reasonably be construed as providing that (1) all employees of Frick's TV were eligible for coverage, (2) Nancy's coverage began on April 1, 1975, and (3) the full-time provision was intended to defer coverage only if Nancy was sick or accidentally disabled (of which there was no evidence) on the date her coverage would otherwise have commenced. Adopting this interpretation as the reasonable interpretation most favorable to Nancy, we conclude Nancy's part-time employment did not bar her beneficiary from recovery.

■ Pacific Mutual also argues that Nancy's failure to satisfy a condition in the master policy "[c]ontributions from participants for participants insurance are required" and in the certificate, "CONTRIBUTIONS. You are required to contribute toward the cost of your coverage under the Policy" bars recovery. It was undisputed that premium payments for Nancy's coverage were made by the Fricks. Failure of Nancy to comply literally with this provision, however, cannot be accepted as a ground for forfeiture of all coverage. It is basically a matter of indifference to an insurance company who pays the premium, so long as it is paid. Furthermore, the Fricks' payment on Nancy's behalf was a fringe benefit that substituted for salary, so the effect was the same as if Nancy received as salary the amount of the premium and paid it directly to the insurer. *Morris v. Travelers Insurance Co.,* 546 S.W.2d 477, 484 (Mo.App.1977).

We conclude that through B.E.S.T., defendant Pacific Mutual placed Nancy in possession of documents which, reasonably interpreted, afforded her coverage. Though it might be argued she had no particular interest in the coverage and was included in the group only to provide sufficient members so the Fricks would obtain coverage, her interests as an insured cannot be ignored. The insurance appeared to her as a fringe benefit, and she might have obtained other insurance from numerous available offerings had her employer not provided her with apparent coverage.

■ The problem was exacerbated by Pacific Mutual's informal marketing procedures. Pacific Mutual relied on B.E.S.T. to handle all details of marketing the insurance and issuing certificates. B.E.S.T. furnished sales kits to any licensed insurance agent and encouraged agents to distribute kits to other licensed salesmen. No informed agent was available to explain matters of eligibility and coverage. Under these conditions it is especially important that contract documents emanating from the insurer be clear to the ordinary person, especially as to the inception of coverage. Had Nancy not met her tragic accidental death, Pacific Mutual would undoubtedly have continued to collect premiums for the duration of her employment even though, according to its theory, she was never insured. This is a situation to be avoided where reasonably possible. An insurance contract is designed to furnish protection and will, where reasonably possible, be construed to accomplish this object. *Weathers v. Royal Indemnity Co.,* 577 S.W.2d 623, 626 (Mo. banc 1979): *Greer v. Zurich Insurance Co.,* 441 S.W.2d 15, 30 (Mo.1969).

The only disputed element of plaintiff's case was Nancy's coverage. We find as a

matter of law that Nancy was within the coverage of the group insurance policy; the judgment in favor of her beneficiary was correct and is affirmed.

HIGGINS, GUNN, BILLINGS and DONNELLY, JJ. and LOWENSTEIN, Special Judge, concur.

HOUSER, Senior Judge, dissents.

WELLIVER and BLACKMAR, JJ., not sitting.